UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLOANTO CORPORATION, *et al.*,

    Plaintiffs,

vs.

HYPERION ENTERTAINMENT CVBA,

    Defendant.

Case No. C18-381RSM

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

This matter comes before the Court on the Motion for Preliminary Injunction filed by Plaintiffs Amiga, Inc., Itec, LLC, Amino Development Corporation (collectively the "Amiga Parties"), and Cloanto Corporation ("Cloanto"). Dkt. #45. Plaintiffs move the Court to enjoin Defendant Hyperion Entertainment CVBA ("Hyperion") from marketing, offering for sale, or selling certain software products titled "Amiga OS 3.1.4." Defendant Hyperion opposes. Dkt. #48. The Court has determined that it can rule on this issue without oral argument. For the reasons set forth below, the Court DENIES Plaintiffs' Motion.

## II. BACKGROUND

The Court will focus on those few background facts necessary for this ruling and will save a full recitation of facts for a later time.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 1

Plaintiffs base their case on an alleged breach of a Settlement Agreement entered into by Hyperion and the Amiga Parties in 2009, incorporated into a Stipulated Judgment signed by this Court on December 14, 2009, in Case No. C07-0631-RSM. *See* Settlement Agreement, Dkt. #1-1 at 4–46. The 2009 Settlement Agreement established that the Amiga Parties were owners of "Amiga OS 3.1," the operating system originally developed by Commodore Business Machines for their Amiga line of computers in 1994, while Hyperion was the owner of "AmigaOS 4," an operating system developed by Hyperion. *See id.* at 4–6. The Agreement went on to grant Hyperion rights to use certain marks and logos under certain conditions, the details of which may be disputed at a later point in this case. *Id.* at 4.

Plaintiffs allege that Hyperion breached this contract by selling a product called "Amiga OS 3.1.4" in 2018, and by using both the AMIGA OS and "Boing Ball" logo marks to market and sell Amiga OS 3.1.4. Dkt. #45 at 2–3. Plaintiffs filed this suit shortly after this happened. However, Plaintiffs also assert that Hyperion quietly packaged Amiga OS 3.1 with its Amiga OS 4 software as early as 2011 and began selling Amiga OS 3.1 separately under a different name in 2016. *Id.* at 8.

Paragraph 16 of the 2009 Settlement Agreement purports to authorize Plaintiffs to seek injunctive relief (among other remedies) without the necessity of proving actual damage:

> The Parties agree and acknowledge that a breach of any provision of this Agreement by the other Party may result in irreparable injury, the extent of which would be difficult and/or impractical to assess, and that monetary damages alone would be an inadequate remedy for such breach, in which case, the nonbreaching Party shall be entitled to seek injunctive relief (inter alia related to protection of its intellectual property rights), in addition to, and without prejudice, to any other remedies such as specific performance of this Agreement as may be necessary or appropriate without the necessity of proving actual damage by reason of any such breach of this Agreement.

Dkt. #1-1 at 11.

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 2

### III. DISCUSSION

#### A. Legal Standard for Preliminary Injunctions

Relief from a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). A party can obtain a preliminary injunction by showing that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 555 U.S. 20. A preliminary injunction may also be appropriate if a movant raises "serious questions going to the merits" and the "balance of hardships . . . tips sharply towards" it, as long as the second and third *Winter* factors are satisfied. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

"Evidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm," so long as there is concrete evidence in the record of those things. *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). A party seeking injunctive relief may not rely on "unsupported and conclusory statements regarding harm [the plaintiff] might suffer" in the future. *Id.* Irreparable harm will not be presumed where plaintiff presents no proof beyond speculation that its reputation or goodwill in the market will be damaged, because the Court has no way of evaluating this intangible harm. *See Mirina Corp. v. Marina Biotech*, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011).

#### B. Analysis of Irreparable Harm

The Court need not analyze all the above factors if the absence of support for one factor is dispositive. Although Plaintiffs contend that the test for a preliminary injunction is a "sliding scale" where a higher probability of success reduces the required degree of irreparable harm, and

that the Ninth Circuit has "often compressed this analysis into a single continuum where the required showing of merit varies inversely with the showing of irreparable harm," *see* Dkt. #45 at 12 (citing cases), the moving party must still present some non-speculative evidence of the likelihood of irreparable harm. *See Winter*, *supra*.

Plaintiffs are incorrect in arguing that their "burden of proving likelihood of irreparable harm" is "diminished" by Paragraph 16 of the 2009 Settlement Agreement. *See id.* at 14. Plaintiffs provide no legal support for the idea that parties can contract away the requirement for presenting evidence of irreparable harm for a preliminary injunction motion.

Plaintiffs' evidence of irreparable harm comes from two declarations of their own corporate representatives. First, a declaration of William McEwen, secretary of Amiga, Inc., says the Amiga Parties will suffer damage to their reputations and goodwill "as well as through being denied the benefit of their bargain with Hyperion to determine which rights it granted to each of its licensees." Dkt. #45-9 (McEwen Decl.), ¶ 21. Second, a declaration of Michele Console Battilana, president of Cloanto, states Cloanto will suffer a loss of distributors and customers, a collapse of sales of its Classic Support products, and damage to the goodwill and reputation that Cloanto has built up over more than 20 years. Dkt. #45-1 (Battilana Decl.), ¶¶ 35-37.

Hyperion argues this evidence fails to point to real injuries and is conclusory. Dkt. #48 at 14. Hyperion maintains that "[w]hile it is true that trademarks embody the goodwill, if any, consumers associate with the products and services offered using the marks, only Amiga, Inc. ever had the right to use in commerce the 'AmigaOS' and 'Boing Ball' marks, and has not done so since 2009." *Id.* (citing Dkt. #50 (Hermans Decl.), ¶¶10-12). Hyperion argues that Plaintiffs agreed in the 2009 Settlement Agreement not to market any Operating System using the term "Amiga operating system", making it "difficult to imagine any circumstances under which

Hyperion's use of AmigaOS to describe an operating system would cause the Amiga Parties [as opposed to Cloanto] irreparable harm." *Id*. Hyperion maintains that Cloanto has a damages remedy at law available at the end of this lawsuit. *Id.* Hyperion also highlight the "lengthy delay" from when Plaintiffs assert that Hyperion began distributing Amiga OS 3.1 in 2011 to this lawsuit 7 years later. *Id.* at 13.

On Reply, Plaintiffs largely ignore Hyperion's arguments as to irreparable harm. Plaintiffs only dispute whether it was 2011, 2016, or October 2018 when Hyperion first started selling Amiga OS 3.1. Dkt. #53 at 8.

The Court has examined the two declarations submitted by Plaintiffs. William McEwen states merely that Amiga and the Amiga Parties "will suffer irreparable harm by being denied the benefit of their bargain with Hyperion… particularly in light of the fact that the rights granted to Hyperion in the Settlement Agreement were royalty-free," and that the damage to Amiga "likes [sic] in the damage to the reputation and good will of Amiga, Inc. caused by Hyperion's current misrepresentations about the rights it was granted and its wanton theft of intellectual property rights." Dkt. #45-9 at ¶ 21. This is not sufficiently detailed or factually supported to warrant an injunction. It essentially amounts to a party naming its injuries in a declaration. There is also no basis for the Court to find the harm above would be irreparable.

Michele Battilana, president of Cloanto, states via declaration that Hyperion's use of AMIGA OS and the Boing Ball logo "is aimed at causing, and has in fact caused, the public to believe that Amiga OS 3.1 was developed and is owned by Hyperion..." Dkt. #45-1 at ¶ 35. The support for this contention is thin. Michele Battilana asserts that "one of Cloanto's largest resellers" will no longer sell Cloanto's software given Hyperion's public representation that its Amiga OS 3.1.4 product is legitimate, that "[a]nother major distributor of Cloanto's Classic

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 5

Support software informed me on November 16 that sales collapsed due to the availability of 'Amiga OS 3.1.4,' and that Cloanto's sales of 3.1. Classic Support software have "stopped" in Ireland and are "collapsing" in Spain and the United States "where resellers have started to sell Hyperion's 'Amiga OS 3.1.4' products." *Id*. at ¶ 36. There are no citations to records, charts, or other exhibits. Michele Battilana concludes as a consequence of all of this that Cloanto will suffer a loss of customers and goodwill as well as severe damage to its reputation. *Id*. at ¶ 37. The Court finds this evidence speculative, vague, and unsupported by declarations of those who could testify with actual knowledge. Given all of the above, Plaintiffs have failed to demonstrate this essential requirement for a preliminary injunction and this Motion will be denied.

## IV. CONCLUSION

The Court, having considered the parties' briefing, the declarations and exhibits in support thereof, and the remainder of the record, hereby finds and ORDERS that Plaintiffs' Motion for Preliminary Injunction, Dkt. #45, is DENIED.

DATED this 3rd day of April, 2019.

*[signature]*

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE