UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLOANTO CORPORATION, *et al.*,

Plaintiffs,

vs.

HYPERION ENTERTAINMENT CVBA,

Defendant.

Case No. C18-381 RSM

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS IN PART

## I. INTRODUCTION

This matter comes before the Court on the Defendant Hyperion Entertainment CVBA ("Hyperion")'s Motion to Dismiss in Part. Dkt. #52. Specifically, Hyperion moves under Rule 12(b)(1) and (6) for the Court to dismiss: (1) Plaintiffs' First Cause of Action (Breach of Contract) as brought by Cloanto Corporation ("Cloanto"), (2) Plaintiffs' Seventh Cause of Action (Lanham Act §43(a)) as brought by Cloanto, and (3) Plaintiffs' Eighth Cause of Action (Declaration of Trademark Ownership). *See id.* at 3. Plaintiffs Cloanto, Amiga, Inc., Itec, LLC, and Amino Development Corporation oppose. Dkt. #54. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Hyperion's Motion.

## II. BACKGROUND

As this is a partial motion to dismiss primarily based on standing, the Court will focus only on the relevant factual allegations in the Second Amended Complaint (Dkt. #47), the 2009

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS IN PART - 1

Settlement Agreement at issue, attached to the Complaint, and the following procedural history of this case. The Court will not recount here the long history of the various software versions, trademarks, copyrights, and transfers of such between the parties. Suffice it to say that this case deals with copyrights, trademarks, and the right to sell software related to the Amiga operating system.

In 2009, Amiga, Itec, and Amino (collectively, the "Amiga Parties") entered into a Settlement Agreement with Hyperion that sits at the center of the claims currently before the Court. Dkt. #1-1. Cloanto was not a party to this contract but was mentioned in an attachment as an existing license holder. *See id.* at 19. This Agreement included a "Successor/Acquirer Agreement Form" attached to the Settlement Agreement as "Exhibit 3." *See id.* at 22. In 2011 and 2012, Amiga, Inc. transferred ownership to Cloanto of copyrights to certain software mentioned in the Agreement. Dkt. #47 at 8. On May 10, 2018, well after this dispute began, Cloanto executed Exhibit 3, described further below, and delivered it to Hyperion's counsel on the same day. *See id.* at 9. Plaintiffs allege that Hyperion breached the Agreement by infringing on the copyrights and trademarks held by Cloanto.

This case began as two separate lawsuits. Cloanto first filed against Hyperion on December 14, 2017, in the Northern District of New York. Case No. 2:18−cv−00535−RSM, Dkt. #1. Hyperion later brought the instant action against Plaintiffs on March 13, 2018. Dkt. #1. On July 30, 2018, these cases were consolidated. Case No. 2:18−cv−00535−RSM, Dkt. # 40.

On November 28, 2018, a new entity, C-A Acquisition Corporation, was formed. *See* Dkt #61-1. C-A and Cloanto are both owned by the same person, Michele "Mike" Console Battilana. Dkt. #57-3 ("Battilana Declaration"), ¶ 2.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS IN PART - 2

On December 28, 2018, the Court granted leave for the parties to file a Second Amended Complaint to consolidate claims and "reorganize the Parties' positions to reflect Cloanto Corporation, Amiga, Inc., Itec, LLC, and Amino Development Corporation as Plaintiffs, and Hyperion Entertainment CVBA as Defendant." Dkt. # 46. The Second Amended Complaint was filed on December 29, 2018. Dkt. # 47.

On January 14, 2019, Hyperion filed the instant Motion to Dismiss in Part Plaintiffs' Second Amended Complaint. Dkt. #52.

On February 1, 2019, weeks after Hyperion's Motion to Dismiss was filed and a mere three days before Plaintiffs' Response brief was due, C-A Acquisition acquired all remaining intellectual property assets of Plaintiff Amiga, Inc. and then granted Cloanto certain rights. Battilana Declaration, ¶¶ 3–4. Plaintiffs believe that "the rights granted to Cloanto resolve all questions raised by Hyperion in its motion to dismiss in part (Dkt. No. 52) as to Cloanto's standing to bring trademark claims." Dkt. #57 at 2.

On March 6, 2019, Plaintiffs filed a Motion seeking to amend the Complaint to add claims based on this transfer of rights and to add C-A Acquisition as a new party. Dkt. #57. On April 8, 2019, the Court denied that Motion finding a lack of diligence on the part of Plaintiffs. Dkt. #65.

### III. DISCUSSION

#### A. Legal Standard

Under Rule 12(b)(1), a complaint must be dismissed if the plaintiff lacks Article III standing. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The Supreme Court has determined that to establish standing a plaintiff must demonstrate her injury is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (citation omitted).

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

**B. Analysis**

**1. First Cause of Action – Breach of Contract**

Hyperion argues that Cloanto lacks standing to bring a breach of contract claim because Cloanto was not a party to 2009 Settlement Agreement or an intended third-party beneficiary. Dkt. #52 at 5 (citing *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JP Morgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012)). Plaintiffs do not plead that Cloanto is a party to the Settlement Agreement. Instead, Plaintiffs allege that Cloanto is an "Acquirer" with the same rights as the Amiga Parties. *See* Dkt # 47 at ¶¶ 31-32. Plaintiffs rely on a "Successor/Acquirer Agreement Form" attached to the Settlement Agreement as "Exhibit 3." *See* Dkt. #1-1 at 22. This

is a proposed, fill-in-the-blank form to be filled out by a future business entity, *e.g.* a corporation. There is only one signature line—for the Acquirer business entity. This form provides that the Acquirer "covenants and agrees with Hyperion Entertainment C.V.B.A. that Acquirer will comply with all obligations of the Amiga Parties under the Settlement Agreement…" *Id*. Later the form states that the Acquirer "acknowledges and agrees that it will be bound by the terms and conditions of the Settlement Agreement applicable to the Amiga Parties…" *Id*. As alleged in the Second Amended Complaint, Cloanto signed Exhibit 3 to the 2009 Settlement Agreement and delivered it to Hyperion's counsel on May 10, 2018.

Hyperion maintains that under this form the Acquirer is bound to the terms of the Agreement but not guaranteed any rights under that Agreement, like the right to sue for breach, relying on language elsewhere in the Agreement stating "[t]his Agreement may not be assigned to any third party without the prior written consent of all Parties hereto." *Id.* at 15.

Plaintiffs respond by arguing that "'terms and conditions' can only be read to encompass not just obligations of the transferor, but all the terms and conditions, including the party's rights, duties, obligations and remedies." Dkt. #54 at 5. Plaintiffs admit that "[o]bviously, the assignment provision is not applicable here, because the Settlement Agreement was not assigned to Cloanto" and that "[r]ather, rights in relevant assets were transferred to Cloanto, and the Settlement Agreement clearly contemplates – and permits – such transfers." *Id*. at 6.

Cloanto does not allege standing as a third-party beneficiary. The question before the Court is whether Cloanto has standing to sue in the shoes of Amiga after signing this Successor/Acquirer Agreement Form. This question turns on the difference between a "Successor/Acquirer" and an "assignee." The Court notes that "[l]awsuits by assignees of contract rights satisfy Article III standing requirements." *Dz Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS IN PART - 5

*Agency, Inc.*, 2015 U.S. Dist. LEXIS 79394, *12-13, 2015 WL 3797162 (W.D. Wash. June 17, 2015) (citing *Sprint Comm's Co., LP v. APCC Servs., Inc.*, 554 U.S. 269, 285-86, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008)).

The form at Exhibit 3 is not itself a valid contract between Cloanto and Hyperion. At best, the fill-in-the-blank Exhibit 3 indicates that the Amiga Parties and Hyperion contracted to allow the Amiga Parties to transfer "all obligations of the Amiga Parties" and "the terms and conditions of the Settlement Agreement applicable to the Amiga Parties" to a successor entity. This language appears carefully worded to avoid transferring the Amiga Parties' *rights* under the Settlement Agreement. Coupled with a plain language reading of the clause prohibiting *assignment* of the Agreement to a third party without Hyperion's consent, which has not been given, the Court agrees with Hyperion that Cloanto has not acquired standing to sue for breach of contract. Accordingly, the Court will grant this portion of the instant Motion and dismiss this cause of action as to Cloanto. This finding does not preclude Cloanto from pursuing other claims against Hyperion related to copyright or trademark infringement, or from relying on the terms of the Settlement Agreement to determine Hyperion's rights under copyright and trademark law.

### 2. Seventh Cause of Action

"To establish standing to sue for trademark infringement claim under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225-26 (9th Cir. 2008).

Plaintiffs' Second Amended Complaint asserts that Amiga Inc. is the owner of all rights in the AMIGA mark. Dkt. #47 at ¶ 73. Plaintiffs assert in briefing that C-A Acquisitions Corp. is the

new owner, but that C-A and Cloanto are both owned by the same individual. Dkt. #54 at 10. Plaintiffs provide no other argument to support Cloanto bringing this claim. The Court agrees with Hyperion that Plaintiffs have not shown that Cloanto has standing to pursue a claim for relief under the Lanham Act given the current arrangement. Accordingly, this cause of action will be dismissed as brought by Cloanto.

### 3. Foreign Trademarks

Plaintiffs' Eighth Cause of Action seeks a declaratory judgment finding that Hyperion acquisition of certain foreign trademarks violates the Settlement Agreement, and that Hyperion must relinquish to Amiga or withdraw or cancel these trademark applications and registrations. Dkt. #47 at 24–25.

Hyperion argues that "[p]rinciples of international comity suggest that the Court must decline to exercise declaratory judgment jurisdiction" to adjudicate rights related to those applications and registrations for marks at issue that were issued in foreign jurisdictions—the Benelux countries, France, Germany, Italy and Spain. Dkt. #52 at 8. Hyperion argues that there is no statutory authority for this Court to adjudicate foreign trademark ownership and validity. *Id*.

Plaintiffs respond that they "are not asking the Court to interpret the laws of foreign jurisdictions, but to require Hyperion to comply with the terms and conditions of the Settlement Agreement – which clearly states that Hyperion is a worldwide licensee, not owner, of the trademarks at issue in this case – and to divest itself of its ill-gotten gains." Dkt. #54 at 12. Plaintiffs maintain that the Settlement Agreement has worldwide application, and that the terms "worldwide" and "anywhere in the world" are used in Sections 1(b) (grant of rights in the Software), 1(c) (grant of rights in trademarks), 2 (Non-Aggression), 4 (Non-Interference and Non-Compete), 18(d) (grant of license back under certain conditions), and Exhibit 1 (listing worldwide

agreements to which Hyperion's exclusive worldwide rights are subject). *Id.* These sections grant rights and arguably impose obligations throughout the world, not just in the United States.

On Reply, Hyperion asserts that "language of the Agreement granting Hyperion a worldwide license in certain other marks is inapplicable to the question of this Court's authority to adjudicate the validity and ownership of Hyperion's foreign marks." Dkt. #55 at 7. Hyperion offers no further discussion on this point.

Based on the record before it, the Court disagrees with Hyperion. The Agreement, taken as a whole, could be interpreted as granting Hyperion the right to use a narrow list of AMIGA trademarks, in such a way that the use by Hyperion of other related AMIGA trademarks would be in violation of the Agreement. The Court has jurisdiction over the remaining contract claim between the Amiga Parties and Hyperion, and can rule that Hyperion has breached that contract without "scrutiny of the administrative acts of multiple foreign trademark officials." *See* Dkt. #52 at 10. In any event, this claim is sufficiently pled to survive a motion to dismiss. Because this claim can proceed as a simple review of the contract, the Court need not address the issues of international comity or the limited extraterritorial reach of the Lanham Act. The Court will not dismiss this cause of action at this time.

### IV. CONCLUSION

The Court, having considered the parties' briefing, the declarations and exhibits in support thereof, and the remainder of the record, hereby finds and ORDERS that Defendant Hyperion's Motion to Dismiss in Part (Dkt. #52) is GRANTED IN PART AND DENIED IN PART. Plaintiffs' First Cause of Action (Breach of Contract) as brought by Plaintiff Cloanto and Seventh Cause of Action (Lanham Act §43(a)) as brought by Plaintiff Cloanto are

DISMISSED.  Given the procedural history of this case, the Court does not grant Plaintiffs leave to amend the Second Amended Complaint at this time.

DATED this 16th day of May 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE