UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CLOANTO CORPORATION, *et al.*, | Case No. C18-381 RSM |
| Plaintiffs, | ORDER |
| v. | |
| HYPERION ENTERTAINMENT CVBA, | |
| Defendant. | |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiffs Amiga, Inc. ("Amiga"), Itec, LLC ("Itec"), and Amino Development Corporation ("Amino")'s Motion for Partial Summary Judgment (Dkt. #100), Defendant Hyperion Entertainment C.V.B.A. ("Hyperion")'s Motion for Summary Judgment (Dkt. #105), Plaintiffs' Motion for Leave to File and Supplemental Briefing (Dkt. #133), and Hyperion's Motion for Leave to File Answer to Plaintiff's Second Amended Complaint and Second Amended Counterclaims (Dkt. #137).  The Court has determined it can rule on the motions without oral argument.  For the reasons set forth below, the Court DENIES, GRANTS, DENIES, and GRANTS the motions.

## II.    BACKGROUND

"Settlement agreements are designed to, and usually do, end litigation, not create it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).  Since the 1980s, the parties to

ORDER - 1

this lawsuit have been litigating ownership and licensing disputes related to the Amiga operating system software, which was developed during the infancy of the personal computer age by Commodore Business Machines ("Commodore").  Dkt. #106 ¶¶ 6–7.  In a 2009 case before this Court, *Amiga, Inc. v. Hyperion VOF*, No. CV07-0631 RSM, current Plaintiffs Amiga, Itec, and Amino (collectively, the "Amiga Parties") entered into a comprehensive Settlement Agreement and Consent Order, which should have put to rest what can only be described as a tortured history of litigation.  Dkt. #106 ¶ 8; Dkt. #47 ("Second Amended Complaint") ¶ 22.  Yet, issues before the Court then remain before the Court now.

The instant case was initiated on December 14, 2017, when Plaintiff Cloanto Corporation ("Cloanto") filed suit against Hyperion in the U.S. District Court for the Northern District of New York alleging Hyperion exceeded the rights granted to it in the Settlement Agreement thereby resulting in copyright and trademark infringement.  The Amiga Parties were not parties to that lawsuit.  In response, on March 13, 2018, Hyperion sued the Amiga Parties and Cloanto in this Court (Dkt. #1), and on the following day moved to dismiss or stay the New York lawsuit or transfer it to the Western District of Washington.  Shortly thereafter, Hyperion and Cloanto stipulated to transfer the New York case to this Court.  Both Cloanto and the Amiga parties accuse Hyperion of material breaches of the Settlement Agreement as well as infringement of Cloanto's copyrights.  Dkt. #47.

In November 2018, Plaintiffs created a new entity, C-A Acquisition Corporation ("C-A Acquisition"), after the deadline for joining additional parties.  Dkt. #61-1.  C-A Acquisition and Cloanto are both owned by the same person, Michele "Mike" Console Battilana.  Dkt. #57-3 ("Battilana Declaration"), ¶ 2.  On March 6, 2019, Plaintiffs filed an Amended Motion to Extend Deadlines in Scheduling Order to Permit Plaintiffs to File a Third Amended Complaint seeking

to add C-A Acquisition as a new party and add claims-based Plaintiffs' transfer of rights to C-A Acquisition.  Dkt. #57.  In related briefing, Plaintiffs explained that "C-A Acquisition acquired all rights in the trademarks that are at issue in this case, including the right to sue and recover for past infringements."  Dkt. #62 at 5.  On April 8, 2019, the Court denied that motion finding a lack of diligence on the part of Plaintiffs.  Dkt. #65.

Prior to C-A Acquisition's formation, Hyperion moved to dismiss Plaintiffs' First Cause of Action for breach of contract (as brought by Cloanto), Seventh Cause of Action under the Lanham Act (brought by Cloanto), and Eighth Cause of Action for a declaration of trademark ownership (brought by all Plaintiffs).  Dkt. #52.  On May 16, 2019, the Court granted in part and denied in part Hyperion's motion.  Dkt. #69.  Specifically, the Court dismissed the First Cause of Action based on its finding that Cloanto was merely a "successor" and not a party to the Settlement Agreement.  Dkt. #69 at 4–6.  The Court also dismissed the Seventh Cause of Action because it agreed with Hyperion that Plaintiffs had not shown that Cloanto has standing to pursue a claim for relief under the Lanham Act.  Dkt. #69 at 7–8.

Hyperion and Plaintiffs have now brought their own motions for summary judgment. Dkt. #100 (Plaintiffs' Motion for Partial Summary Judgment); Dkt. #105 (Hyperion's Motion for Summary Judgment).  Plaintiffs seek summary judgment on their First Cause of Action for breach of contract and Eighth Cause of Action for unauthorized trademark use as a matter of law. Dkt. #100.  Hyperion seeks summary judgment against Plaintiffs on all counts of the Second Amended Complaint.  Dkt. #105.  Each party opposes the other's motion.  Dkts. #107, 109.

Plaintiffs also bring a Motion for Leave to File and Supplemental Briefing (Dkt. #133) and Hyperion brings a Motion for Leave to File Answer to Plaintiff's Second Amended

Complaint and Second Amended Counterclaims (Dkt. #137).  Both motions are also opposed.  Dkts. #134, 138.

### III.   DISCUSSION

**A. Summary Judgment Legal Standard**

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial.  Fed. R. Civ. P. 56(e).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted.  *Id.* at 249–50.  It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter.  *Id.*  Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

//

//

**B.  Breach of Contract Claim (Count One)**

Plaintiffs and Hyperion both seek summary judgment on the Amiga Parties' breach of contract claim (count one).  Plaintiffs ask the Court to find that Hyperion breached the Settlement Agreement entered into by Hyperion and the Amiga Parties in 2009, as matter of law, by (1) filing applications and obtaining registration for 18 trademarks (*see* Dkt. #100 at 2–3); (2) using the AMIGAOS word mark and Boing Ball Mark to commercialize, distribute and sell subsequently modified versions of the AmigaOS 3.1 Agreement, including but not limited to "AmigaOS 3.1.4"; (3) using KICKSTART and WORKBENCH to license, market, and sell versions of the Amiga operating system prior to AmigaOS 3.1; and (4) using AMIGAOS, POWERED BY AMIGAOS, and the Boing Ball Mark on notepads, stickers, posters, t-shirts, plush balls, inflatable beach balls, and other merchandise.  Dkt. #100 at 16–21.  Plaintiffs argue that the terms of the Settlement Agreement are unambiguous, and that Hyperion breached these terms under Washington law.  *Id.*

Hyperion argues that the Court need not reach the issue of whether it breached any terms of the Settlement Agreement, because none of the Amiga Parties may sue Hyperion for material breach of the Settlement Agreement in the first place.  Dkt. #105 at 16.  Hyperion points to the Amiga Parties' admission that "C-A Acquisition acquired all rights in the trademarks that are at issue in this case, including the right to sue and recover for past infringements," and that "[a]ccordingly, Amiga, Inc., has relinquished those rights, and only C-A Acquisition, and Cloanto may bring the trademark infringement and related trademark claims made in this action."  Dkt. #62 at 5.  Because the Court barred C-A Acquisition from joining this action as a party and previously found Cloanto lacked standing to sue for breach of contract, Hyperion argues that no

Plaintiff in this case continues to exist who can press a breach of settlement agreement cause of action against Hyperion.  Dkt. #105 at 16.

In response, Plaintiffs argue their admission that C-A Acquisition acquired all rights in the subject trademarks, and that Cloanto acquired all rights in the subject copyrights, such that "only C-A Acquisition and Cloanto can bring *trademark and copyright infringement claims* asserted in this action" (Dkt. #62, 5:9-16, emphasis added) does not judicially estop the Amiga Parties from proceeding on their *contract claims*.  Dkt. #107 at 6.  Plaintiffs clarify the foregoing statement does not assert that C-A Acquisition and Cloanto acquired *contractual* rights.  *Id.*  Yet, Plaintiffs ignore half of their admission—the full statement is as follows: that "C-A Acquisition acquired all rights in the trademarks that are at issue in this case, *including the right to sue and recover for past infringements*."  The Amiga Parties seek to do just that in their breach of contract claim: sue and recover from past infringements of rights and trademarks at issue in this case, which now—per Plaintiffs' admission—have all been transferred to C-A Acquisition.  *See* Dkt. #100 at 16–17 (listing out the specific infringements underlying the Amiga Parties' breach of contract claim).  The Amiga Parties therefore lack standing to bring their breach of contract claim as a matter of law and the Court dismisses count one.

### C.  Copyright Claim and Claim for Integrity of Copyright Management Information (Counts Two and Three)

Cloanto, alone, brings a copyright infringement claim (count two) and claim for integrity of copyright management information (count three) against Hyperion.  Dkt. #47 ¶¶ 55–71.  Cloanto brings its copyright infringement claim against Hyperion for "creat[ing], distribut[ing], and [selling]…the 'Infringing Products'" in violation of the Settlement Agreement and that "Hyperion's copying, offering for sale, distributing, and/or licensing the Infringing Products

without Cloanto's permission constitute copyright infringement under 17 U.S.C. § 501, et seq."
*Id.* ¶¶ 56, 59.  Cloanto then brings its claim for integrity of copyright management information
alleging that "[b]oth Amiga operating system 3.1 and Kickstart ROM version 3.1 included …
CMI …, and that "Hyperion removed the CMI from these works and replaced it with copyright
information that falsely identified Hyperion as the author and copyright holder," and then "sold
Infringing Products."  *Id.* ¶¶ 65–67.

Hyperion argues that these claims constitute an "Amiga Prohibited Action" under the
Settlement Agreement that Cloanto is not authorized to raise.  Dkt. #105 at 16–19.  Under the
Successor/Acquirer Agreement, Cloanto, as the Acquirer, "covenants and agrees with Hyperion
Entertainment C.V.B.A. that Acquirer will comply with all obligations of the Amiga Parties
under the Settlement Agreement."  Dkt. #1-1 ("Settlement Agreement"), Ex. 3.  One of those
obligations is the Non-Aggression Clause, which provides:

> <u>Non-Aggression</u>. The Amiga Parties agree and covenant that they will not institute any
> action, claim or proceeding anywhere in the world against Hyperion arising out of
> Hyperion's use, marketing, licensing, or sublicensing of the Software or AmigaOS 4 or
> Hyperion's use of the Licensed Marks in connection therewith (an "Amiga Prohibited
> Action"), *unless the challenged activity constitutes a material breach of this Agreement*.
> The Amiga Parties understand and acknowledge that this Agreement is an absolute
> defense to any Amiga Prohibited Action brought against Hyperion by any Amiga Party,
> by a successor to any Amiga Party, by a Purchaser or by a licensee and that, should any
> Amiga Party, successor to any Amiga Party, Purchaser or licensee file an Amiga
> Prohibited Action against Hyperion in the future, Hyperion will be entitled to an
> unqualified order of dismissal…

Dkt. #1-1 ¶ 3 (emphasis added).  Hyperion argues that Cloanto's allegation underlying its
copyright infringement claim falls within the definition of an Amiga Prohibited Action because it
alleges "Hyperion continues to distribute, sell, or license some or all of the Infringing Products,"
and therefore Cloanto is barred from bringing this claim. Dkt. #105 at 19.  Likewise, Hyperion
argues that Cloanto's claim for integrity of copyright management information is an Amiga
Prohibited Action because it alleges "Hyperion … sold Infringing Products."  *Id.* at 20.  While

the Non-Aggression Clause makes an exception for "challenged activity constitute[ing] a material breach of this Agreement," Hyperion correctly argues that Colanto lacks standing to sue for breach of the Settlement Agreement per this Court's May 2019 Order.  *See* Dkt. #69.

In response, Plaintiffs argue Hyperion's reading of the Non-Aggression Clause is illogical because "Hyperion's position amounts to claiming that once the Amiga Parties sell their trademarks and copyrights to successors, Hyperion is free to exceed the rights granted under the Settlement Agreement and commit any act of infringement whatsoever."  Dkt. #107 at 13. Hyperion responds it is not arguing that after having transferred their rights to a successor, the Amiga Parties lack standing to enforce the Settlement Agreement as a matter of law—but that in this particular instance they lack standing because of their admission, which was adopted by the Court.  Dkt. #112 at 13.  The Court agrees that the issue here is that Plaintiffs have tied themselves into a knot.  The Court cannot change the facts before it or the parties' admissions and cannot reconstruct an unambiguous Settlement Agreement borne out of lengthy litigation.

As to Cloanto's lack of standing to sue for material breach of the Settlement Agreement, Plaintiffs refer to their earlier arguments the Court previously found unavailing.  *See* Dkt. #107 at 12; Section II.B.  Therefore, the Court finds that Cloanto's claims for copyright infringement and integrity of copyright management information are barred by the Non-Aggression Clause and cannot fall within the material breach exception because Cloanto lacks standing.  Counts two and three are dismissed.

**D.  Trademark Claims (Counts 4 and 6)**

The Amiga Parties (count 4) and Cloanto (count 6), separately bring common law trademark claims against Hyperion.  Dkt. #47 ¶¶ 72-81, 91-107.  The Amiga Parties also bring unfair competition and Lanham Act claims (count 5) for alleged trademark violations by

Hyperion. *Id.* ¶¶ 82-90.  In Plaintiffs' opposition to Hyperion's Motion for Summary Judgment, they concede that because Cloanto assigned its application to Amiga Corporation (formerly C-A Acquisition Corp.) on February 16, 2021, and the mark registered on February 16, 2021, Cloanto does not assert trademark rights in this action, and agrees that the Sixth Cause of Action should be dismissed because the issue is moot. Dkt. #107 at 3.

Hyperion argues that the Amiga Parties' common law and statutory trademark claims must also be dismissed because Plaintiffs have conceded that the Amiga Parties have relinquished its copyright and trademark rights and therefore lack standing.  The Court agrees and dismisses counts four, five, and six.

**E.  Declaratory Relief Regarding Foreign Trademarks (Count Eight)**

The Court previously denied Hyperion's Motion to Dismiss Plaintiffs' Eighth Cause of Action for declaratory relief.    Dkt. #69 at 7–8.  Plaintiffs' Eighth Cause of Action seeks a declaratory judgment finding that Hyperion's acquisition of certain foreign trademarks violates the Settlement Agreement, and that Hyperion must relinquish to Amiga or withdraw or cancel these trademark applications and registrations. Dkt. #47 at 24–25.  In its previous Order, the Court found that "the [Settlement] Agreement, taken as a whole, could be interpreted as granting Hyperion the right to use a narrow list of AMIGA trademarks, in such a way that the use by Hyperion of other related AMIGA trademarks would be in violation of the Agreement" and that the Court "has jurisdiction over the remaining contract claim between the Amiga Parties and Hyperion, and can rule that Hyperion has breached that contract without 'scrutiny of the administrative acts of multiple foreign trademark officials.'" Dkt. #69 at 8 (citing Dkt. #52 at 10).

The briefing before the Court at that time did not address Plaintiffs' admission as to the Amiga Parties' standing to bring any claim other than the claim for declaratory relief.  Now

however, the Court has found that the Amiga Parties lack standing to bring their breach of contract claim, common law trademark claims, or statutory trademark claim as pled in light of Plaintiffs' admission regarding the transfer of rights to C-A Acquisition.

Hyperion argues that as a result Cloanto is the only remaining Plaintiff with potential standing to proceed on this claim. Dkt. #105 at 22. The Court agrees. Hyperion further argues that Plaintiffs' allegations underlying their Eighth Cause of Action fall within the definition of an Amiga Prohibited Action because they allege that "Hyperion's trademark applications and registrations violate the Settlement Agreement,", and "[a]t no time did Hyperion acquire independent rights to use and register … [said marks]." Dkt. #47 ¶119, 125. Therefore, Cloanto is prohibited from bringing any such action for the same reasons previously discussed in this Order. The Court agrees that Cloanto is barred from bringing this claim by terms of the Settlement Agreement's Non-Aggression Clause and that the material breach exception in that clause cannot apply to Cloanto. Count eight is dismissed.

### F. Order Directing the USPTO to Deny Opposition No. 91237628USPTO (Count Nine)

In Plaintiffs' Opposition to Hyperion's Motion for Summary Judgment, they concede that Hyperion has withdrawn its opposition in the USPTO making their Ninth Cause of Action moot. Dkt. #107 at 2 n.1. The Court dismisses count nine.

### G. Motion for Leave to File Supplemental Briefing

Plaintiffs filed a Motion for Leave to File and Supplemental Briefing (Dkt. #133). The Court has reviewed the supplemental briefing but finds the material does not have a bearing on the issues deemed dispositive of Plaintiffs' case. Therefore, the Motion is denied as moot.

//

**H. Motion for Leave to File Amended Answer**

Hyperion filed a Motion for Leave to File Answer to Plaintiff's Second Amended Complaint and Second Amended Counterclaims arguing that following the filing of cross motions for summary judgment, Plaintiffs "engag[ed] in a letter-writing campaign threatening at least three of Hyperion's suppliers or distributors with legal action." Dkt. #137 at 4.

A "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2). Courts apply this policy with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Five factors are commonly used to assess the propriety of granting leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the party has previously amended the pleading. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *Foman v. Davis*, 371 U.S. 178, 182 (1962). In conducting this five-factor analysis, the court must grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Hyperion seeks to amend its Answer due to recent alleged developments. There is no indication of undue delay, bad faith, or prejudice in this amendment. This is Hyperion's first motion to file an amended pleading. Plaintiffs oppose Hyperion's motion on the basis that (a) the proposed amendments fail to allege the elements of a tort of "interference with business expectancy" related to the correspondence; (b) the correspondence is protected First Amendment litigation conduct under the Noerr-Pennington doctrine; (c) Hyperion fails to state a claim upon which relief may be granted; and (d) the proposed amendments are futile. In other words, Plaintiffs only address one of the five factors. In weighing the five factors, the Court finds that Hyperion's Motion for Leave to File Answer to Plaintiff's Second Amended Complaint and Second Amended Counterclaims is granted.

## IV.    CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1.  Plaintiffs' Motion for Partial Summary Judgment (Dkt. #100) is DENIED;

2.  Hyperion's Motion for Summary Judgment (Dkt. #105) is GRANTED as to all Counts contained in the Second Amended Complaint and as to all Plaintiffs;

3.  Plaintiffs' claims in the Second Amended Complaint are DISMISSED;

4.  Plaintiffs' Motion for Leave to File and Supplemental Briefing (Dkt. #133) is DENIED as moot;

5.  Hyperion's Motion for Leave to File Answer to Plaintiff's Second Amended Complaint and Second Amended Counterclaims (Dkt. #137) is GRANTED. Hyperion is directed to immediately file the Amended Answer attached to its Motion.

DATED this 30th day of March, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE