THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CLOANTO CORPORATION, AMIGA, INC., ITEC, LLC and AMINO DEVELOPMENT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> HYPERION ENTERTAINMENT CVBA, <br><br> Defendant. | 2:18-cv-00381-RSM <br> (Consolidated with 2:18-CV-0535) <br><br><br> **HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND SECOND AMENDED COUNTERCLAIMS** |
| HYPERION ENTERTAINMENT CVBA, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> CLOANTO CORPORATION, AMIGA, INC., ITEC, LLC and AMINO DEVELOPMENT CORPORATION, <br><br> Counter-Defendants. | |

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

Defendant/Counterclaim Plaintiff Hyperion Entertainment C.V.B.A. ("Hyperion"), answering Plaintiffs' Second Amended Complaint, states and alleges as follows. For clarity and due to the complexities of the issues alleged and the sheer number of claims, as to each numbered paragraph in the Second Amended Complaint, Hyperion has set forth below the allegation, followed by its response:

## NATURE OF THE ACTION

1.      This is an action, *inter alia,*

     a.  By all Plaintiffs against Hyperion for breach of contract arising out Hyperion's breaches of a Settlement Agreement entered into in 2009 by and between Amiga, Itec and Amino (hereinafter collectively the "Amiga Parties"), on the one hand, and Hyperion on the other (the "Settlement Agreement");

**RESPONSE: This paragraph does not appear to be intended to set forth specific allegations of fact requiring a response; to the extent such allegations are intended, Hyperion denies them. However, this paragraph incorrectly alleges Cloanto Corporation ("Cloanto") has a breach of contract claim against Hyperion; the Court dismissed that claim with prejudice (Dkt. #69).**

     b.  By Amiga against Hyperion for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1119 and § 1125(a).

**RESPONSE: This paragraph does not appear to be intended to set forth specific allegations of fact requiring a response; to the extent such allegations are intended, Hyperion denies them.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    c.  By Cloanto against Hyperion for trademark infringement and unfair

2    competition under the Lanham Act, 15 U.S.C. § 1119 and § 1125(a);

3    **RESPONSE: This paragraph does not appear to be intended to set forth specific**

4    **allegations of fact requiring a response; to the extent such allegations are intended, Hyperion**

5    **denies them. However, this paragraph incorrectly alleges Cloanto has an unfair competition**

6    **claim against Hyperion; the Court dismissed that claim with prejudice (Dkt. #69).**

7    d.  By Amiga and Cloanto against Hyperion for tortious interference with contract;

8    **RESPONSE: This paragraph does not appear to be intended to set forth specific**

9    **allegations of fact requiring a response; to the extent such allegations are intended, Hyperion**

10    **denies them.**

11    e.  By Cloanto against Hyperion for copyright infringement under the United

12    States Copyright Act of 1976, 17 U.S.C. § 101; violations of 17 U.S.C. § 1202

13    ("Integrity of Copyright Management Information"); unfair competition; and

14    tortious interference with contract; and

15    **RESPONSE: This paragraph does not appear to be intended to set forth specific**

16    **allegations of fact requiring a response; to the extent such allegations are intended, Hyperion**

17    **denies them.**

18    f.  By all Plaintiffs for declaratory relief under 28 U.S.C. § 2201, and for injunctive

19    relief.

20    **RESPONSE: This paragraph does not appear to be intended to set forth specific**

21    **allegations of fact requiring a response; to the extent such allegations are intended, Hyperion**

22    **denies them.**

23

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    2.  Plaintiffs' claims result from Defendant's wrongful and unlawful acts, including

2    but not limited to:

3            a.  Commercial distribution and sale of Amiga operating system 3.1;

4    **RESPONSE: Hyperion denies the allegations of this paragraph 2(a).**

5            b.  Creation of derivative works in Amiga 3.1 (other than AmigaOS 4.0 and

6                subsequent versions) and commercial distribution and sale of same,

7                e.g.,"Kickstart 3.1 (40.72) for desktop Amigas" (a/k/a "Kickstart 3.1.3") and

8                "AmigaOS 3.1.4," which acts are prohibited by the Settlement Agreement and

9                constitute copyright infringement; "Kickstart 3.1 (40.72) for desktop Amigas"

10               (a/k/a "Kickstart 3.1.3") and "AmigaOS 3.1.4," which acts are prohibited by

11               the Settlement Agreement and constitute copyright infringement;

12   **RESPONSE: Responding to this paragraph 2(b), Hyperion admits that it began**

13   **selling its AmigaOS 3.1.4 software on September 30, 2018. Hyperion states that the**

14   **Settlement Agreement speaks for itself, and to the extent these allegations are inconsistent**

15   **with a proper interpretation of the Settlement Agreement, Hyperion denies them. Hyperion**

16   **also denies any allegation of breach or other violation of the Settlement Agreement and**

17   **denies all remaining allegations of this paragraph 2(b).**

18           c.  Commercial distribution and sale of Kickstart ROM versions 1.3 and 3.1, and

19               its licensing of Kickstart ROM version 1.2 and 1.3, which acts are prohibited

20               by the Settlement Agreement and constitute copyright infringement;

21   **RESPONSE: Responding to this paragraph 2(c), Hyperion states that the Settlement**

22   **Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper**

23   **interpretation of the Settlement Agreement, Hyperion denies them. Hyperion also denies any**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1  **allegation of breach or other violation of the Settlement Agreement and denies all remaining**

2  **allegations of this paragraph 2(c).**

3         d.  use of (i) the AMIGA OS and/or "Boing Ball" marks in connection with the

4            commercial distribution and sale of Amiga operating system 3.1, AmigaOS

5            3.1.4, and Kickstart 1.3; (ii) the "Boing Ball" and/or KICKSTART marks in

6            connection with the commercial distribution and sale of Kickstart 3.1 and

7            "Kickstart 3.1.3;" (iii) the KICKSTART mark in connection with the licensing

8            of Kickstart 1.2 and 1.3; and (v) the AMIGA OS mark, "Boing Ball" mark, and

9            "POWERED BY AMIGA OS" on merchandise; all of which acts are prohibited

10           by the Settlement Agreement and constitute trademark infringement;

11 RESPONSE: Responding to this paragraph 2(d), Hyperion states that the Settlement Agreement

12 speaks for itself, and to the extent these allegations are inconsistent with a proper interpretation of

13 the Settlement Agreement, Hyperion denies them. Hyperion also denies any allegation of breach

14 or other violation of the Settlement Agreement and denies all remaining allegations of this

15 paragraph 2(d).

16        e.  removal of copyright management information and substitution of false

17           copyright management information on copies of "AmigaOS 3.1.4" and

18           Kickstart 3.1 to make it appear to purchasers and the public that Hyperion is

19           the owner of the copyrights therein, and to conceal the fact that such uses constitute

20           an infringement of copyright; and

21 **RESPONSE: Responding to the allegations of this paragraph 2(e), Hyperion states**

22 **that the allegations of this paragraph are vague and nonspecific as to what is meant by "to**

23 **make it appear to purchasers and the public" and on that basis denies them; Hyperion is**

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 5
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **without information or knowledge to form a belief as to the truth of the remaining allegations**

2    **in this paragraph 2(e), and therefore denies them.**

3          f.    registrations and applications in multiple jurisdictions for registration of

4                trademarks owned by Amiga and Cloanto, including AMIGA, AMIGA OS,

5                AMIGA ONE, KICKSTART, WORKBENCH, the "Boing Ball" mark, and

6                AMIGA FOREVER, which registrations and applications are prohibited by the

7                Settlement Agreement, and (i) constitute trademark infringement against

8                Amiga, with respect to AMIGA, AMIGA OS, AMIGA ONE, the "Boing Ball"

9                mark and KICKSTART; and (ii) constitute trademark infringement against

10               Cloanto with respect to WORKBENCH and AMIGA FOREVER marks, and

11               tortious interference with contract granting Cloanto rights of ownership in those

12               marks.

13   **RESPONSE: Responding to this paragraph 2(f), Hyperion states that the Settlement**

14   **Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper**

15   **interpretation of the Settlement Agreement, Hyperion denies them. Hyperion also denies**

16   **any allegation of breach or other violation of the Settlement Agreement and denies all**

17   **remaining allegations of this paragraph 2(f).**

18        3.    The Settlement Agreement has, and was intended to have, worldwide effect over

19   the conduct of the Amiga Parties and Hyperion.

20   **RESPONSE: Hyperion admits that it entered into a settlement agreement in**

21   **September 2009 and affirmatively states that the agreement speaks for itself. On that basis,**

22   **Hyperion denies the allegations of this paragraph 3 to the extent they are inconsistent with a**

23   **proper interpretation of the Settlement Agreement.**

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 6
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1

**PARTIES**

2      4.      Cloanto is a corporation organized and existing under the laws of the State of

3  Nevada, with an address at 5940 S. Rainbow Blvd., Suite 400 #67834, Las Vegas, NV 891187-

4  2507.

5      **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

6  **as to the truth of the allegations in this paragraph 4, and therefore denies them.**

7      5.      Amiga is a corporation organized and existing under the laws of the State of

8  Delaware, and whose registered agent is Corporation Service Company, 251 Little Falls Drive,

9  Wilmington, DE 19808.

10     **RESPONSE: Hyperion is without information or knowledge sufficient to form a**

11  **belief as to the truth of the allegations in this paragraph 5, and therefore denies them.**

12     6.      Itec is a limited liability company organized and existing under the laws of the State

13  of New York, with a business address c/o Reed Smith LLP, 599 Lexington Avenue, 24th Floor, New

14  York, NY 10022.

15     **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

16  **as to the truth of the allegations in this paragraph 6, and therefore denies them.**

17     7.      Amino is a corporation organized under the laws of the State of Washington, was

18  administrative dissolved, but has the right under Washington state law to bring this lawsuit.

19     **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

20  **as to the truth of the allegations in this paragraph 7, and therefore denies them.**

21     8.      Upon information and belief, Hyperion is a Belgian limited liability company

22  having a principal place of business at Avenue de Tervueren 45, Brussels, Belgium 1040.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion denies that it is a Belgian limited liability company, but admits**

2    **that its principal place of business is located in Brussels, Belgium. Hyperion denies all**

3    **remaining allegations in this paragraph 8.**

4    <u>**JURISDICTION AND VENUE**</u>

5    9.      Subject matter jurisdiction over Plaintiffs' claims is conferred upon the Court

6    pursuant to 15 U.S.C. § 1121 ("Lanham Act"), 17 U.S.C. § 101 et seq. ("U.S. Copyright Act"), 17

7    U.S.C. § 1202 ("Integrity of copyright management information"), and 28 U.S.C. §§ 1331, 1338,

8    1367 and 2201 (federal "Declaratory Judgment Act"), and with respect to the Parties' contract

9    claims, principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10   **RESPONSE: Responding to the allegations in this paragraph 9, Hyperion admits that**

11   **this court has subject matter jurisdiction pursuant to the cited federal statutes.**

12   10.     This Court has personal jurisdiction over Hyperion because Hyperion is (a) party to

13   the Settlement Agreement, which expressly provides in ¶ 16 that any disputes relating thereto shall

14   be resolved "solely through litigation in the U.S. District Court for the Western District of

15   Washington;" and (b) filed a "First Amended Complaint" in this action (ECF No. 7).

16   **RESPONSE: Hyperion admits that it entered into a Settlement Agreement in**

17   **September 2009 and that the Settlement Agreement expressly provides disputes relating**

18   **thereto shall be resolved "solely through litigation in the U.S. District Court for the Western**

19   **District of Washington". Hyperion also admits that it filed a First Amended Complaint (Dkt.**

20   **# 7) in 2:18-cv-0535-JLR, but denies all remaining allegations of this paragraph 10.**

21   3                    <u>**FACTS AND ALLEGATIONS**</u>

22   *Rights Granted to Cloanto Prior to the Settlement Agreement*.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1        11.    In 1997, Cloanto's predecessor-in-interest, Cloanto Italia srl (now Cloanto IT srl),

2 entered into an agreement with a predecessor of Amiga, Inc., called Amiga International, whereby

3 Cloanto was granted the worldwide, perpetual right and license: (a) to copy, distribute, market and

4 sell the object code of all then-existing Amiga operating systems, including 0.7 through 3.1 and

5 "Enhancements" (as defined below) in connection with Cloanto's emulation software and all

6 "classic" AMIGA applications and games; and (b) to use the AMIGA name and trademark, and the

7 Boing Ball Mark, in connection with all of the foregoing. The Agreement required payment by

8 Cloanto of approximately 20,000 Deutschmarks (the "Contract Payment"), payable in quarterly

9 sums related to Cloanto's sales until satisfied

10       **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

11 **as to the truth of the allegations in this paragraph 11, and therefore denies them.**

12        12.    At the same time, with the knowledge and consent of Amiga International, Cloanto

13 began providing users with the ability to run the Amiga operating systems on original AMIGA

14 hardware.

15       **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

16 **as to the truth of the allegations in this paragraph 12, and therefore denies them.**

17        13.    Since 1997, under its AMIGA FOREVER trademark, Cloanto has been the world

18 leader in software that allows modern hardware and operating systems to emulate legacy AMIGA

19 hardware and run (a) AMIGA operating systems 0.7 through 3.1, as well as updates, patches, and

20 enhancements by various Amiga developers ("Enhancements"), (b) AMIGA applications, and (c)

21 games created for the AMIGA platform.

22

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1      **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

2      **as to the truth of the allegations in this paragraph 13, and therefore denies them.**

3      14.      Between 1997 and 1999, Cloanto's AMIGA FOREVER products also provided

4      users with the ability to run Amiga operating systems 1.1 through 3.0, but not Amiga operating

5      system 3.1, on original AMIGA hardware (sometimes referred to as "Classic Support"). Cloanto

6      did not include Amiga operating system 3.1 in its first two releases, AMIGA FOREVER 1.0 and

7      AMIGA FOREVER 2.0, because Amiga International, then-owner of the AMIGA assets, asked

8      Cloanto to delay its inclusion so that Cloanto didn't cut into Amiga International's sales of Amiga

9      operating system 3.1 upgrade kits for original AMIGA hardware.

10     **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

11     **as to the truth of the allegations in this paragraph 14, and therefore denies them.**

12     15.      Between 1997 and 1999, Cloanto featured its AMIGA FOREVER products, which

13     included Cloanto's emulation software, cross-platform networking software, and native AMIGA

14     software     (collectively,   "Amiga   Forever   Products"),   on   the   Cloanto   website   at

15     www.cloanto.com/amiga/forever and sold those products via distribution and retail partners

16     (including e-commerce resellers) (collectively, "Resellers").

17     **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

18     **as to the truth of the allegations in this paragraph 15, and therefore denies them.**

19     16.      In 1997 and 1999, Cloanto was granted the non-exclusive use of the AMIGA mark

20     in connection with its Amiga Forever Products.

21     **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

22     **as to the truth of the allegations in this paragraph 16, and therefore denies them.**

23

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 10
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

17.    By 1999, when the Amiga International assets were transferred to Amiga, Inc. (Washington), Cloanto had paid nearly all of the Contract Payment. Subsequently, in satisfaction of the remainder of the Contract Payment, Cloanto and Amiga's then-principal, Bill McEwen, negotiated and entered into an agreement whereby Cloanto granted to Amiga the right to make Cloanto's Personal Paint software available for use with Amiga's upcoming OS 4.

**RESPONSE: Hyperion is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph 17, and therefore denies them.**

18.    With the release of AMIGA FOREVER 3.0 in 1999, and since that release without interruption, Cloanto's Amiga Forever Products have provided users with the ability to run all Amiga operating systems (i.e., from 0.7 through 3.1) on original AMIGA hardware.

**RESPONSE: Hyperion is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph 18, and therefore denies them.**

19.    Since 1999, Cloanto has operated the website www.amigaforever.com, featuring its Amiga Forever Products and offering them for sale through Resellers.

**RESPONSE: Hyperion is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph 19, and therefore denies them.**

20.    Since 2000, also under its AMIGA FOREVER trademark, Cloanto has offered and sold an Amiga OS "3.X," which consists of Amiga OS 3.1 with Enhancements. Cloanto released Amiga OS 3.X in order to address various needs, including those that might arise from "Y2K" and the rapid rate of growth in the size of hard drives. Unlike the Amiga OS's 0.7 through 3.1, Amiga OS 3.X did not initially run on original AMIGA hardware.

**RESPONSE: Hyperion is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph 20, and therefore denies them.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

21.    In 2006, Cloanto released AMIGA FOREVER 2006, which included the same Amiga operating systems as on previous releases, together with an enhanced version of Amiga OS 3.X ROM that could operate on original AMIGA hardware.

**RESPONSE: Hyperion is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph 21, and therefore denies them. The Settlement Agreement and Subsequent Transfers to Cloanto.**

22.    In 2009, Amiga, Itec, and Amino (collectively, the "Amiga Parties") entered into the Settlement Agreement, which granted Hyperion in Section 1(b) the right to "use, develop, modify, commercialize, distribute, and market" Amiga operating system 3.1 "through any means (including but not limited to making AmigaOS 4 available to the public via the internet) and for any current or future hardware platform."

**RESPONSE: Hyperion admits that it entered into a Settlement Agreement in September 2009 and affirmatively states that the agreement speaks for itself. On that basis, Hyperion denies the allegations of this paragraph 22 to the extent they are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other allegations in this paragraph 22 are denied.**

23.    The Settlement Agreement expressly conditions any rights granted to Hyperion on the prior grants of rights to Cloanto, which are described in the Settlement Agreement as "Various licenses commencing in 1994; indefinite term" and "Rights sufficient to support Amiga Forever, including emulation modules." (Emphasis added.)

**RESPONSE: Hyperion admits that it entered into a Settlement Agreement in September 2009 and affirmatively states that the agreement speaks for itself. On that basis, Hyperion denies the allegations of this paragraph 23 to the extent they are inconsistent with**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **a proper interpretation of the 2009 Settlement Agreement. All other allegations in this**

2    **paragraph 23 are denied.**

3    24.    Prior to entering into the Settlement Agreement, Hyperion was well aware of the

4    broad scope of Cloanto's prior rights, including Classic Support, which Cloanto had been

5    exercising since the late 1990s.

6    **RESPONSE: Hyperion denies the allegations in this paragraph 24.**

7    25.    Pursuant to agreements entered into by Amiga, Inc. and Cloanto, in 2011 and 2012,

8    Amiga, Inc.

9    a.    transferred ownership to Cloanto of the copyrights in and to certain Amiga

10        software. These included but were not limited to (i) all AMIGA operating

11        systems up to and including Amiga operating system 3.1 and related updates

12        and patches; and (ii) Kickstart ROMs 1.2, 1.3 and 3.1;

13    **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

14    **as to the truth of the allegations in this paragraph 25(a), and therefore denies them.**

15    b.    withdrew opposition in the United States Trademark Office to registration of

16        Cloanto's AMIGA FOREVER mark, permitted registration of that mark by

17        Cloanto, and agreed not to oppose registration and maintenance of that mark in

18        every country of the world; and

19    **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

20    **as to the truth of the allegations in this paragraph 25(b), and therefore denies them.**

21    c.    withdrew opposition in the United States Trademark Office to registration of

22        Cloanto's WORKBENCH mark, permitted registration of that mark by Cloanto,

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    and agreed not to oppose registration and maintenance of that mark in every

2    country of the world.

3    **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

4    **as to the truth of the allegations in this paragraph 25(c), and therefore denies them.**

5    26.    Cloanto is the owner of the following copyright registrations:

6    a.    Amiga operating system and software version 3.1 (TX0006587397), registered

7    on April 27, 2007, the transfer to Cloanto of which registration was recorded in

8    the U.S. Copyright Office on March 13, 2017 under Recordation No.

9    V9946D337.

10    **RESPONSE: Hyperion is without information or knowledge to form a belief as to the**

11    **truth of the allegations in this paragraph 26(a), and therefore denies them.**

12    b.    Amiga Kickstart ROM: version 1.3 (TX0003282574), registered on September

13    6, 1991, the transfer to Cloanto of which registration was recorded in the U.S.

14    Copyright Office on March 11, 2013 under Recordation No. V3626D795.

15    **RESPONSE: Hyperion is without information or knowledge to form a belief as to the**

16    **truth of the allegations in this paragraph 26(b), and therefore denies them.**

17    *Cloanto's Right to Enforce the Settlement Agreement.*

18    27.    Section 15 of the Settlement Agreement states, *inter alia*, that any acquirer of a

19    material asset subject to the Settlement Agreement "must execute an agreement substantially in the

20    form attached hereto as Exhibit 3 at or prior to the time it completes or closes that acquisition or

21    purchase."

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion denies the allegations of this paragraph 27 to the extent they**

2    **are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other**

3    **allegations in this paragraph 27 are denied.**

4    28.    On May 10, 2018, Cloanto executed the "Exhibit 3," which was delivered to

5    Hyperion's counsel on the same day via email.

6    **RESPONSE: Hyperion admits the allegation in this paragraph 28 that Plaintiff's**

7    **counsel purported to deliver a form document on or about the specified date and that**

8    **undersigned counsel received that form document via email, but Hyperion is without**

9    **information or knowledge sufficient to form a belief as to the remaining allegations of this**

10   **paragraph 28.**

11   29.    Section 18(c) of the Settlement Agreement states that if an Acquirer fails to sign the

12   Exhibit 3 Agreement, Hyperion "is then authorized to foreclose – by commencement of a

13   foreclosure proceeding – on its Security Interest in the Collateral," which consists of Amiga

14   operating system 3.1, and the AMIGA OS, AMIGA ONE, and "Boing Ball" marks.

15   **RESPONSE: Hyperion denies the allegations of this paragraph 29 because they are**

16   **inconsistent with a proper interpretation of the 2009 Settlement Agreement. Paragraph 18(c)**

17   **of the Settlement Agreement states that Exhibit 3 must be signed "prior to or at the closing**

18   **of the acquisition or purchase." All other allegations in this paragraph 29 are denied.**

19   30.    Hyperion never commenced a foreclosure proceeding and consequently, under

20   Section 18(c) of the Settlement Agreement, Hyperion has "no right to exercise or foreclose" on the

21   Collateral.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Responding to the allegations of this paragraph 30, Hyperion admits**

2    **that it has not brought an action to foreclose, but Hyperion denies all other allegations in this**

3    **paragraph 30.**

4        31.    Exhibit 3 to the Settlement Agreement consists of two paragraphs, the first of which

5    states that the Acquirer (here, Cloanto) "covenants and agrees with [Hyperion] that Acquirer will

6    comply with all obligations of the Amiga Parties under the Settlement Agreement" and the second

7    of which states that Acquirer "acknowledges and agrees that it will be bound by the terms and

8    conditions of the Settlement Agreement applicable to the Amiga Parties…."

9    **RESPONSE: Hyperion denies the allegations of this paragraph 31 to the extent they**

10    **are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other**

11    **allegations in this paragraph 31 are denied.**

12        32.    The "terms and conditions of the Settlement Agreement applicable to the Amiga

13    Parties" include the right to enforce the terms and conditions of the Settlement Agreement against

14    Hyperion.

15    **RESPONSE: Responding to this paragraph 32, Hyperion states that the agreement**

16    **speaks for itself, and to the extent these allegations are inconsistent with a proper**

17    **interpretation of the 2009 Settlement Agreement, Hyperion denies them.**

18        33.    Exhibit 3, signed by Cloanto, does not extinguish or in any way supersede the prior

19    rights granted to Cloanto described in paragraphs 11 through 21 of this Second Amended

20    Complaint ("Cloanto's Prior Rights"), which include the right to use the terms "AmigaOS" and

21    "Amiga operating system" to advertise, market, and sell Amiga operating systems up to and

22    including Amiga operating system 3.1.

23    **RESPONSE: Hyperion denies the allegations of this paragraph 33.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

*Hyperion's Rights under the Settlement Agreement.*

34.    The Settlement Agreement grants Hyperion sole ownership in Amiga OS 4, except to the extent that its source code incorporates that of Amiga OS 3.1.

**RESPONSE: Hyperion admits that the Settlement Agreement grants Hyperion sole ownership in Amiga OS 4, admits that it entered into a settlement agreement in September 2009, and affirmatively states that the agreement speaks for itself. On that basis, Hyperion denies the allegations of this paragraph 34 to the extent they are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other allegations in this paragraph 34 are denied.**

35.    "AmigaOS 4" is defined in the Settlement Agreement as "the Operating System developed by Hyperion and based in part on the Software, including without limitation the Software Architecture of the Software as described in the Documentation, in any version (irrespective of version numbering, e.g., AmigaOS 5)."

**RESPONSE: Hyperion denies the allegations of this paragraph 35 to the extent they are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other allegations in this paragraph 35 are denied.**

36.    Section 1(b) of the Settlement Agreement grants Hyperion, "[w]ithout prejudice to any Existing License Agreements listed on Exhibit 1," an exclusive, perpetual, worldwide and royalty-free, transferable right and Object Code and Source Code license to the Software in order to use, develop, modify, commercialize, distribute and market the Software in any form (including through sublicensing), on any medium (now known or otherwise), through any means (including but not limited to making AmigaOS 4 available to the public via the internet) and for any current or future hardware platform."

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1   **RESPONSE: Hyperion denies the allegations of this paragraph 36 to the extent they**

2 **are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other**

3 **allegations in this paragraph 36 are denied.**

4   37. The "Software" is defined in the Settlement Agreement as "Amiga OS 3.1, which

5 is the Operating System (including without limitation its Software Architecture as described in the

6 Documentation) originally developed, owned and marketed by Commodore Business Machines

7 (CBM) for their Amiga line of computers in 1994."

8   **RESPONSE: Hyperion denies the allegations of this paragraph 37 to the extent they**

9 **are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other**

10 **allegations in this paragraph 37 are denied.**

11   38. Neither Kickstart 1.2 nor Kickstart 1.3 is part of, or contained in, or functions with

12 the disk-based portion of the Software, i.e., Amiga OS 3.1.

13   **RESPONSE: Hyperion denies the allegations of this paragraph 38 to the extent they**

14 **are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other**

15 **allegations in this paragraph 38 are denied.**

16   **39.** Neither Kickstart 1.2 nor Kickstart 1.3 are part of the "software architecture" of

17 Amiga OS 3.1.

18   **RESPONSE: Hyperion denies the allegations of this paragraph 39 to the extent they**

19 **are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other**

20 **allegations in this paragraph 39 are denied.**

21   40. The grant of rights to Hyperion in Section 1(b) of the Settlement Agreement was

22 limited by the specific grant of trademark rights in Section 1(c) of the Settlement Agreement.

23   **RESPONSE: Hyperion denies the allegations of this paragraph 40.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

41.     Section 1(c) of the Settlement Agreement grants Hyperion "[s]olely for purposes of marketing, distributing and making available AmigaOS 4 and any hardware required or desired to operate with AmigaOS 4," an "exclusive, perpetual, worldwide and royalty-free, transferable right and license to use the Exclusive Licensed Marks [i.e., AMIGA OS AMIGAOS, AMIGA ONE and AMIGAONE), and a nonexclusive, perpetual, worldwide and royalty-free, transferable right and license to use the "Boing Ball" logo mark." (The "Exclusive Licensed Marks" and "Boing Ball" mark are collectively referred to herein as the "Hyperion Licensed Marks.")

**RESPONSE: Hyperion admits that it entered into a Settlement Agreement in September 2009 and affirmatively states that the agreement speaks for itself. On that basis, Hyperion denies the allegations of this paragraph 41 to the extent they are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other allegations in this paragraph 41 are denied.**

42.     At the time the Settlement Agreement was entered into, the intent of Amiga, Inc. was solely to allow Hyperion to move forward with the development, marking, distribution and sale of Amiga OS 4 and related hardware, and any future versions thereof (i.e., Amiga OS 4.x, Amiga OS 5, etc.).

**RESPONSE: Hyperion is without information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph 42, and therefore denies them. Hyperion affirmatively states the Settlement Agreement speaks for itself, and denies these allegations to the extent they are inconsistent with the Settlement Agreement.**

43.     The intent of the parties to the Settlement Agreement in drafting the grant provisions regarding the software and trademarks was to ensure that Hyperion had the necessary

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    and sufficient rights to commercialize, distribute, and market Amiga OS 4.0 (and subsequent

2    versions), while not distributing and selling Amiga operating system 3.1 itself.

3    **RESPONSE: Hyperion denies the allegations of this paragraph 43.**

4    44.    At the time it entered into the Settlement Agreement, Hyperion was fully aware of

5    Cloanto's Amiga Forever Products.

6    **RESPONSE: Responding to the allegations of this paragraph 44, Hyperion states that**

7    **the allegations in the paragraph are vague and nonspecific as to what is meant by "fully**

8    **aware of," and on that basis denies them. Hyperion affirmatively states that it has all**

9    **necessary licenses and other authorizations to use any intellectual property rights embodied**

10   **in products it distributes.**

11   45.    Hyperion is prohibited under the Settlement Agreement from doing any of the

12   following:

13       a.   Using the Hyperion Licensed Marks in connection with any activities related to

14            any Amiga operating system or software other than AmigaOS 4;

15   **RESPONSE: Hyperion denies the allegations of this paragraph 45(a).**

16       b.   Using the AMIGA mark for any purpose;

17   **RESPONSE: Hyperion denies the allegations of this paragraph 45(b).**

18       c.   Commercially distributing or selling Amiga operating system 3.1 or any

19            derivatives thereof (other than AmigaOS 4.0);

20   **RESPONSE: Hyperion denies the allegations of this paragraph 45(c).**

21       d.   Using the mark WORKBENCH to distribute or sell any operating system,

22            including but not limited to Amiga operating system 3.1 or any derivatives

23            thereof;

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 20
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion denies the allegations of this paragraph 45(d).**

2          e.  Creating derivative works of Amiga operating system 3.1 other than Amiga 4.0;

3    **RESPONSE: Hyperion denies the allegations of this paragraph 45(e).**

4          f.  Distributing or selling Kickstart ROM versions 1.3 and 3.1;

5    **RESPONSE: Hyperion denies the allegations of this paragraph 45(f).**

6          g.  Licensing Kickstart ROM versions 1.2 or 1.3 to third parties;

7    **RESPONSE: Hyperion denies the allegations of this paragraph 45(g).**

8          h.  Using the AMIGA OS mark in connection with the distribution and sale of

9          "AmigaOS 3.1.4;"

10   **RESPONSE: Hyperion denies the allegations of this paragraph 45(h).**

11         i.  Using the "Boing Ball" mark in connection with the commercial distribution

12         and sale of "AmigaOS 3.1.4" and Kickstart 1.3;

13   **RESPONSE: Hyperion denies the allegations of this paragraph 45(i).**

14         j.  Using the "Boing Ball" and KICKSTART marks in connection with the

15         commercial distribution and sale of Kickstart 3.1 and "Kickstart 3.1.3;"

16   **RESPONSE: Hyperion denies the allegations of this paragraph 45(j).**

17         k.  Using the KICKSTART mark in connection with the licensing of Kickstart 1.

18         and 1.3;

19   **RESPONSE: Hyperion denies the allegations of this paragraph 45(k).**

20         l.  Using any the AMIGA, AMIGA OS, AMIGA ONE, POWERED BY AMIGA,

21         or "Boing Ball" marks in connection with the distribution and sale of

22         merchandise.

23   **RESPONSE: Hyperion denies the allegations of this paragraph 45(l).**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1         m. Claiming ownership of, registering, or applying to register in any country or

2                  jurisdiction any of the marks, AMIGA, AMIGA OS, AMIGA ONE,

3                  KICKSTART, WORKBENCH, the "Boing Ball" mark, or AMIGA

4                  FOREVER; or

5     **RESPONSE: Hyperion denies the allegations of this paragraph 45(m).**

6         n. Claiming ownership of any operating system or software other than Amiga O

7                  4.0, but only insofar as that operating system contained "new matter" as

8                  understood under copyright law.

9     **RESPONSE: Hyperion denies the allegations of this paragraph 45(n).**

10   *Hyperion's Material Breaches of the Settlement Agreement and Wrongful Acts with Respect to*

11   *Copyright.*

12       46.    Hyperion has knowingly, intentionally, and materially breached the Settlement

13   Agreement by engaging in numerous acts, including but not necessarily limited to the following

14         a. beginning in or around 2016, advertising, marketing, offering for sale, and

15                  selling as downloads Amiga operating system version 3.1, initially under the

16                  names "New Hyperion 3.1 Kickstart ROM" and "Workbench 3.1," for which

17                  Hyperion altered the boot-up screen by (i) adding the Boing Ball Mark. After

18                  Cloanto sent Hyperion and its e-commerce provider a cease-and-desist notice

19                  for misappropriating Cloanto's federally registered WORKBENCH trademark

20                  (U.S. Reg. No. 3946885), Hyperion began selling Amiga operating system 3.

21                  under the name "AmigaOS Workbench 3.1;"

22     **RESPONSE: Hyperion denies the allegations of this paragraph 46(a).**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1       b.   beginning in or around March 2013, licensing Kickstart 1.2, Kickstart 1.3,a

2           Kickstart 3.1 to a company called Individual Computers for use in the

3           "ACA500" series of hardware accelerator cards to be advertised, marketed,

4           offered for sale, and sold by that company;

5   **RESPONSE: Hyperion denies the allegations of this paragraph 46(b).**

6       c.   surreptitiously around the end of 2011 or beginning of 2012, and then openly

7           beginning in or around 2016, advertising, marketing, offering for sale, and

8           selling CD-ROMs and downloads containing different versions of AmigaOS 4.0

9           or "Amiga OS 4.1 Final Edition" that also contained Amiga operating system

10          3.1 and Kickstart 1.3;

11  **RESPONSE: Hyperion denies the allegations of this paragraph 46(c).**

12      d.   marketing, distributing and selling a downloadable version of Kickstart 3.1,

13          advertised as "Kickstart 3.1 (40.72) for desktop Amigas – FREE Kick [sic] 1.

14          included!;"

15  **RESPONSE: Hyperion denies the allegations of this paragraph 46(d).**

16      e.   Displaying the AMIGA trademark on the boot-up screen of "Kickstart 1.3,"

17          which mark appears until the user inserts a bootable medium containing the

18          disk-based portion of Amiga OS 1.3 (or lower);

19  **RESPONSE: Hyperion denies the allegations of this paragraph 46(e).**

20      f.   Displaying on the boot-up screen of "Kickstart 3.1" the Boing Ball Mark and a

21          false and misleading copyright notice that reads "Copyright © 1985- 2016

22          Hyperion Entertainment CVBA;"

23  **RESPONSE: Hyperion denies the allegations of this paragraph 46(f).**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

g.  beginning on or about October 1, 2018, advertising, marketing, offering for sale, and selling downloads, floppy discs and ROM chips of the following products: "AmigaOS 3.1.4 for 68K Amiga 500/600/2000," "AmigaOS 3.1.4 for 68K Amiga 1200," "AmigaOS 3.1.4 for 68K Amiga 3000," "AmigaOS 3.1.4 for 68K Amiga 4000," and "AmigaOS 3.1.4 for 68K Amiga 4000T" (collectively, the "3.1.4 Products");

**RESPONSE: Hyperion denies the allegations of this paragraph 46(g).**

h.  in each of the 3.1.4 Products, (i) removing the original Amiga and Commodore copyright notices and replacing them with a false copyright notice claiming Hyperion as sole author and owner of that software, rather than holder of limited license rights, and (ii) adding the Boing Ball Mark;

**RESPONSE: Hyperion denies the allegations of this paragraph 46(h).**

i.  Offering customers the capability of running Amiga operating systems prior to AmigaOS 4.0 in an emulation environment as well as on original AMIGA hardware;

**RESPONSE: Hyperion denies the allegations of this paragraph 46(i).**

j.  Using AMIGAOS, "Powered by AMIGAOS," and the Boing Ball Mark on T-shirts, hoodies, drawstring bags, cooking apron, coffee cups and other merchandise;

**RESPONSE: Hyperion denies the allegations of this paragraph 46(j).**

k.  Falsely claiming ownership of, and filing applications for, registration inthe United States of AMIGAOS, AMIGAONE, and the "Boing Ball" marks; and

**RESPONSE: Hyperion denies the allegations of this paragraph 46(k).**

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 24
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    l.    Falsely claiming ownership of and filing applications and/or obtaining

2          registrations for AMIGA, AMIGA ONE, AMIGA OS, the "Boing Ball" mark,

3          WORKBENCH, KICKSTART and AMIGA FOREVER in the Benelux;

4          KICKSTART in France, Italy, and Spain; AMIGA in Germany; AMIGA

5          FOREOVER, AMIGAOS, and WORKBENCH in the European Union.

6    **RESPONSE: Hyperion denies the allegations of this paragraph 46(l).**

7    47.    Hyperion's acts, taken together, were intended to mislead the public into believing

8    that Hyperion possessed rights that it did not have; to appropriate for itself the goodwill in AMIGA,

9    AMIGA ONE, AMIGA OS, the "Boing Ball" mark, WORKBENCH, KICKSTART and AMIGA

10   FOREVER; to conceal the fact that Hyperion was infringing Cloanto's copyrights; and to profit

11   unfairly from the Settlement Agreement.

12   **RESPONSE: Hyperion denies the allegations of this paragraph 47.**

13

14                    **AS AND FOR A FIRST CAUSE OF ACTION**

15                    **By All Parties: Breach of Contract**

16   48.    Plaintiffs repeat and incorporates by reference each of the allegations contained in

17   paragraphs 1 through 47 of this Second Amended Complaint as if fully set forth herein.

18   **RESPONSE: Hyperion repeats and incorporates by reference each of the answers to**

19   **the allegations contained in paragraphs 1 through 47. In responding to these paragraphs 48-**

20   **54, the Court, in its May 16, 2019 Order Granting in Part and Denying in Part Defendant's**

21   **Motion to Dismiss in Part, dismissed Cloanto's breach of contract claim against Hyperion.**

22   **Accordingly, Hyperion is not required to respond to the allegations of paragraphs 48-54 as**

23   **to Cloanto but, to the extent it is required to respond, Hyperion denies the same.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    49.    The Settlement Agreement, which settled various disputes in the Western District

2    of Washington, New York Supreme Court, New York County, and the TTAB, constitutes a valid

3    and binding agreement on the Amiga Parties and Hyperion.

4    **RESPONSE: Hyperion admits that it entered into a Settlement Agreement in**

5    **September 2009 and affirmatively states that the agreement speaks for itself. On that basis,**

6    **Hyperion denies the allegations of this paragraph 49 to the extent they are inconsistent with**

7    **a proper interpretation of the 2009 Settlement Agreement. Further, the allegations of this**

8    **paragraph are vague and nonspecific as to what is meant by "which settled various disputes"**

9    **and on that basis all other allegations in this paragraph 49 are denied.**

10    50.    As an "Acquirer," Cloanto has the same rights and obligations (subject to Cloanto's

11    Prior Rights) under the Settlement Agreement as the Amiga Parties.

12    **RESPONSE: Hyperion denies the allegations of this paragraph 50. The Court, in its**

13    **May 16, 2019, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss**

14    **in Part, found "Exhibit 3 is not itself a valid contract between Cloanto and Hyperion." Th**

15    **Court further found that the language does not transfer the Amiga Parties' rights under thee**

16    **Settlement Agreement.**

17    51.    Plaintiffs have substantially performed their material obligations under the

18    Settlement Agreement.

19    **RESPONSE: Hyperion denies the allegations of this paragraph 51.**

20    52.    Hyperion has committed numerous breaches of the Settlement Agreement described

21    hereinabove.

22    **RESPONSE: Hyperion denies the allegations of this paragraph 52.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

53.     As remedies for breach, paragraph 16 of the Settlement Agreement entitles the non-breaching parties to injunctive relief "in addition to and without prejudice to any other remedies such as specific performance…without the necessity of proving actual damage byreason of any such breach…"

**RESPONSE: Hyperion admits that it entered into a Settlement Agreement in September 2009 and affirmatively states that the agreement speaks for itself. On that basis, Hyperion denies the allegations of this paragraph 53 to the extent they are inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other allegations in this paragraph 53 are denied.**

54.     Plaintiffs are also entitled to a disgorgement of profits earned by Hyperion in violation of the Settlement Agreement, the amount of to be determined at trial.

**RESPONSE: Hyperion denies the allegations of this paragraph 54.**

## AS AND FOR A SECOND CAUSE OF ACTION

### By Cloanto: Copyright Infringement

55.     Cloanto repeats and incorporates by reference each of the allegations contained in paragraphs 1 thorough 54 of this Second Amended Complaint as if fully set forth herein.

**RESPONSE: Hyperion repeats and incorporates by reference each of the answers to the allegations contained in paragraphs 1 through 54.**

56.     In violation of the Settlement Agreement and without Cloanto's permission, Hyperion has created, distributed, and sold the derivative works titled "Kickstart 3.1 (40.72) for desktop Amigas" (a/k/a "Kickstart 3.1.3") and "AmigaOS 3.1.4;" has distributed and sold Kickstart

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 27
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

ROM versions 1.3 and 3.1; and has licensed Kickstart ROM versions 1.2 and 1.3. The foregoing

are hereinafter collectively referred to as the "Infringing Products."

**RESPONSE: Hyperion denies the allegations of this paragraph 56.**

57.    Upon information and belief, Hyperion began distributing, selling, and licensing

Kickstart ROM versions 1.2 and 1.3 because Hyperion's rights under the Settlement Agreement

were insufficient for Hyperion to offer its customers the AMIGA software needed to run

applications and games that pre-dated, and so were incompatible with, Amiga OS 3.1.

**RESPONSE: Hyperion denies the allegations of this paragraph 57.**

58.    Despite being aware of Cloanto's rights, and over Cloanto's objections, Hyperion

continues to distribute, sell, or license some or all of the Infringing Products.

**RESPONSE: Hyperion denies the allegations of this paragraph 58.**

59.    Hyperion's copying, offering for sale, distributing, and/or licensing the Infringing

Products without Cloanto's permission constitute copyright infringement under 17 U.S.C. § 501,

*et seq*.

**RESPONSE: Hyperion denies the allegations of this paragraph 59.**

60.    Hyperion's acts of copyright infringement were and are willful and intentional.

**RESPONSE: Hyperion denies the allegations of this paragraph 60.**

61.    As a consequence of Hyperion's unlawful acts of copyright infringement as alleged

herein, Cloanto has suffered and will continue to suffer damages in an amount to be determined at

trial.

**RESPONSE: Hyperion denies the allegations of this paragraph 61.**

62.    Unless Hyperion is restrained from engaging in its infringing conduct, Plaintiff will

be irreparably harmed.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion denies the allegations of this paragraph 62.**

2        63.     Because the copyrights of Amiga operating system 3.1, and Kickstart ROM versions

3    1.3 and 3.1, were registered long prior to the commencement of Hyperion's infringing conduct,

4    Cloanto is entitled to statutory damages and legal fees.

5        **RESPONSE: Hyperion denies the allegations of this paragraph 63.**

6

7                        **AS AND FOR A THIRD CAUSE OF ACTION**

8            **By Cloanto: Integrity of Copyright Management Information**

9        64.     Coranto repeats and incorporates by reference each of the allegations contained in

10   paragraphs 1 thorough 63 of this Second Amended Complaint as if fully set forth herein.

11       **RESPONSE: Hyperion repeats and incorporates by reference each of the answers to**

12   **the allegations contained in paragraphs 1 through 63.**

13       65.     Both Amiga operating system 3.1 and Kickstart ROM version 3.1 included

14   copyright management information ("CMI") as that term is described in section 17 U.S.C. §1202.

15   Said CMI identified the authors of those works as Commodore-Amiga, Inc., the rights and

16   copyrights of which are now owned and registered to Cloanto.

17       **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

18   **as to the truth of the allegations in this paragraph 65, and therefore denies them.**

19       66.     In preparation for sale in physical products and download, Hyperion removed the

20   CMI from these works and replaced it with copyright information that falsely identified Hyperion

21   as the author and copyright holder.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion denies the allegations of this paragraph 66, and Hyperion**

2    **affirmatively states that it has all necessary licenses and other authorizations to use any**

3    **intellectual property rights embodied in products it distributes.**

4    67.    Thereafter, Hyperion sold Infringing Products with false copyright information.

5    **RESPONSE: Hyperion denies the allegations of this paragraph 67.**

6    68.    By removing and altering the CMI on these works, providing false copyright

7    information in connection with Infringing Products, and distributing and selling such Infringing

8    Products, Hyperion acted in violation of 17 U.S.C. § 1202.

9    **RESPONSE: Hyperion denies the allegations of this paragraph 68.**

10    69.    Upon information and belief, Hyperion intentionally removed and altered CMI, and

11    replaced it with false copyright information, knowing that it was removed, altered and replaced it

12    without the authority of Cloanto or the law, and knowing or having reasonable grounds to know

13    that such conduct would enable, facilitate, or conceal Hyperion's acts of infringement.

14    **RESPONSE: Hyperion denies the allegations of this paragraph 69.**

15    70.    Upon information and belief, Hyperion's removal and alternation of CMI and

16    replacement with false copyright information was intended to mislead the public into believing that

17    Hyperion possesses the right to sell Infringing Products, and thereby conceal the fact that Hyperion

18    was infringing Cloanto's copyrights.

19    **RESPONSE: Responding to the allegations of this paragraph 70, Hyperion states that**

20    **the allegations in the paragraph are vague and nonspecific as to what is meant by**

21    **"alternation of CMI," and on that basis denies them; Hyperion also denies the remaining**

22    **allegations of this paragraph 70.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    71.    Hyperion's conduct alleged herein is in violation of the 17 U.S.C. § 1202, and

2    entitles Cloanto to additional and enhanced damages against Hyperion, including but not limited to

3    statutory damages, attorneys' fees, and penalties pursuant to 17 U.S.C. § 1203 and other applicable

4    provisions of the Copyright Act.

5        **RESPONSE: Hyperion denies the allegations of this paragraph 71.**

6

7                    **AS AND FOR A FOURTH CAUSE OF ACTION**

8                    **By Amiga: Common Law Trademark Infringement**

9    72.    Amiga repeats and incorporates by reference each of the allegations contained in

10    paragraphs 1 through 54 of this Second Amended Complaint as if fully set forth herein.

11        **RESPONSE: Hyperion repeats and incorporates by reference each of the answers to**

12    **the allegations contained in paragraphs 1 through 71.**

13    73.    Amiga is the owner of the internationally known trademark AMIGA for computers,

14    software and related goods, and is also the owner of AMIGAOS, AMIGAONE, POWERED BY

15    AMIGA, KICKSTART, and the "Boing Ball" mark (collectively, the "Amiga Marks").

16        **RESPONSE: Hyperion denies the allegations of this paragraph 73.**

17    74.    Amiga has used the Amiga Marks in commerce since the 1980s for computers,

18    software, and related goods, either directly, or through predecessors-in-interest or licensees.

19    **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief as to**

20    **the truth of the allegations in this paragraph 74, and therefore denies them.**

21    75.    Amiga owns registrations of some of the Amiga Marks, including AMIGA, in

22    various jurisdictions outside the United States.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 31
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

2    **as to the truth of the allegations in this paragraph 75, and therefore denies them.**

3        76.    Under the Settlement Agreement, Hyperion was granted only limited rights in the

4    Hyperion Licensed Marks, and no rights whatsoever to use AMIGA, POWERED BY AMIGA or

5    KICKSTART.

6        **RESPONSE: Hyperion admits that it entered into a Settlement Agreement in**

7    **September 2009 and affirmatively states that the agreement speaks for itself. On that basis,**

8    **Hyperion denies the allegations of this paragraph 76 to the extent they are inconsistent with**

9    **a proper interpretation of the 2009 Settlement Agreement. All other allegations in this**

10    **paragraph 76 are denied.**

11        77.    In violation of the Settlement Agreement and without permission from Amiga,

12    Hyperion has used the "Amiga," "Amiga OS," "Kickstart" and/or the "Boing Ball Mark" in

13    connection with the distribution, sale and/or licensing of various products, including New Hyperion

14    3.1 Kickstart ROM, AmigaOS Workbench 3.1, Kickstart 1.2, Kickstart 1.3, and Kickstart 3.1, and

15    "Kickstart 3.1 (40.72) for desktop Amigas." Such uses include but may not be limited to:

16        a.    displaying the AMIGA mark on the boot-up screen of Kickstart 1.3 until the

17            user inserts a bootable medium containing the disk-based portion of Amiga OS

18            1.3 (or lower);

19        **RESPONSE: Responding to this paragraph 77(a), Hyperion admits that it entered**

20    **into a Settlement Agreement in September 2009 and affirmatively states that the Settlement**

21    **Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper**

22    **interpretation of the 2009 Settlement Agreement, Hyperion denies them. Hyperion denies any**

23    **allegation of breach or other violation of the Settlement Agreement.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

b.   placing and displaying the "Boing Ball" on the boot-up screen of "Kickstart 3.1"
(together with the false and misleading copyright notice that reads  "Copyright
© 1985-2016 Hyperion Entertainment CVBA);"

**RESPONSE: Responding to this paragraph 77(b), Hyperion admits that it entered
into a Settlement Agreement in September 2009 and affirmatively states that the Settlement
Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper
interpretation of the 2009 Settlement Agreement, Hyperion denies them.  Hyperion denies any
allegation of breach or other violation of the Settlement Agreement.**

c.   using AMIGA OS and the "Boing Ball" mark in connection with advertising,
marketing, offering for sale, and selling downloads, floppy disks, and ROM
chips of the 3.1.4 Products;

**RESPONSE: Responding to this paragraph 77(c), Hyperion admits that it entered into
a Settlement Agreement in September 2009 and affirmatively states that the Settlement
Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper
interpretation of the 2009 Settlement Agreement, Hyperion denies them.  Hyperion denies any
allegation of breach or other violation of the Settlement Agreement.**

d.   using "Powered BY AMIGA OS" and the "Boing Ball" mark on T-shirts,
hoodies, drawstring bags, cooking apron, coffee cups and other merchandise;

**RESPONSE: Responding to this paragraph 77(d), Hyperion admits that it entered
into a Settlement Agreement in September 2009 and affirmatively states that the Settlement
Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper
interpretation of the 2009 Settlement Agreement, Hyperion denies them.  Hyperion denies any
allegation of breach or other violation of the Settlement Agreement.**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1          e.    falsely claiming ownership of, and filing applications for, registration in the

2                United States for AMIGAOS, AMIGAONE, and the "Boing Ball" marks;

3          **RESPONSE: Responding to this paragraph 77(e), Hyperion admits that it entered into**

4    **a Settlement Agreement in September 2009 and affirmatively states that the Settlement**

5    **Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper**

6    **interpretation of the 2009 Settlement Agreement, Hyperion denies them. Hyperion denies any**

7    **allegation of breach or other violation of the Settlement Agreement.**

8          f.    falsely claiming ownership of and filing applications and/or obtaining

9                registrations for AMIGA, AMIGA ONE, AMIGA OS, the "Boing Ball" mark,

10               and KICKSTART in the Benelux; KICKSTART in France, Italy, and Spain;

11               AMIGA in Germany; and AMIGAOS in the European Union.

12         **RESPONSE: Responding to this paragraph 77(f), Hyperion admits that it entered into**

13   **a Settlement Agreement in September 2009 and affirmatively states that the Settlement**

14   **Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper**

15   **interpretation of the 2009 Settlement Agreement, Hyperion denies them. Hyperion denies any**

16   **allegation of breach or other violation of the Settlement Agreement.**

17         78.    Hyperion's unlawful conduct complained of herein was and is intended to capitalize

18   on the good will in the Amiga Marks for Hyperion's own pecuniary gain.

19         **RESPONSE: Hyperion denies the allegations of this paragraph 78.**

20         79.    Hyperion's unlawful conduct complained of herein was and is (a) calculated to

21   confuse, deceive and mislead consumers into believing that such uses have been authorized by

22   Amiga, and (b) intended to appropriate the Amiga Marks for itself as against its licensor,

23   Amiga,Inc.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1          **RESPONSE: Hyperion denies the allegations of this paragraph 79.**

2          80.     Hyperion's unlawful conduct complained of herein has caused and unless enjoined

3     will continue to cause confusion among consumers as to the rightful ownership and use of the

4     Amiga Marks and the Hyperion Licensed Marks.

5          **RESPONSE: Hyperion denies the allegations of this paragraph 80.**

6          81.     Hyperion's acts complained of herein constitute unfair competition which, unless

7     enjoined by the Court, will result in (a) damage to and destruction and/or diversion of the good will

8     in the Amiga Marks, and (b) unjust enrichment of Hyperion.

9          **RESPONSE: Hyperion denies the allegations of this paragraph 81.**

10

11                    **AS AND FOR A FIFTH CAUSE OF ACTION**

12          **By Amiga: Unfair Competition (15 U.S.C. § 1125(a); Lanham Act § 43(a))**

13          82.     Amiga repeats and incorporates by reference each of the allegations contained in

14     paragraphs 72 through 81 of this Second Amended Complaint as if fully set forth herein.

15          **RESPONSE: Hyperion repeats and incorporates by reference each of the answers to**

16     **the allegations contained in paragraphs 1 through 81.**

17          83.     The conduct of Hyperion complained of herein constitutes the use of symbols or

18     devices, or false designations of origin, false or misleading descriptions of fact, or false and

19     misleading representations of fact, which are likely to cause confusion, mistake, or deception

20     regarding the rights of Amiga and Hyperion in and to the ownership and use of the Amiga Marks.

21          **RESPONSE: Hyperion denies the allegations of this paragraph 83.**

22          84.     Hyperion's conduct was undertaken willfully and with intent to cause confusion,

23     mistake, or deception on the part of the public.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 35
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1     **RESPONSE: Hyperion denies the allegations of this paragraph 84.**

2     85.     By engaging in the acts complaint of herein, Hyperion has substantially damaged

3 the good will in the Amiga Marks.

4     **RESPONSE: Hyperion denies the allegations of this paragraph 85.**

5     86.     Hyperion's conduct has caused, and unless enjoined will continue to cause,

6 irreparable harm and injury to the good will in the Amiga Marks for which there is no adequate

7 remedy at law.

8     **RESPONSE: Hyperion denies the allegations of this paragraph 86.**

9     87.     Hyperion's conduct has also caused, and unless enjoined will continue to cause,

10 inevitable public confusion for which there is no adequate remedy at law.

11     **RESPONSE: Hyperion denies the allegations of this paragraph 87.**

12     88.     Pursuant to 15 U.S.C. § 1116, Amiga is entitled to injunctive relief to enjoin

13 Hyperion from using the Amiga Marks in any manner not expressly authorized in the Settlement

14 Agreement.

15     **RESPONSE: Hyperion denies the allegations of this paragraph 88.**

16     89.     Pursuant to 15 U.S.C. § 1117, Amiga is entitled to recover damages in an amount

17 to be determined at trial.

18     **RESPONSE: Hyperion denies the allegations of this paragraph 89.**

19     90.     Hyperion's acts of unfair competition as alleged herein constitute an exceptional

20 case and were undertaken willfully, thereby entitling Amiga to receive three times its actual

21 damages and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a) and (b).

22     **RESPONSE: Hyperion denies the allegations of this paragraph 90.**

23

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 36
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1

2

## AS AND FOR A SIXTH CAUSE OF ACTION

### By Cloanto: Common Law Trademark Infringement

3       91.     Cloanto repeats and incorporates by reference each of the allegations contained in

4   paragraphs 1 through 90 of this Second Amended Complaint as if fully set forth herein.

5       **RESPONSE: Hyperion repeats and incorporates by reference each of the answers to**

6   **the allegations contained in paragraphs 1 through 90.**

7       92.     In 2016, Amiga failed to renew its U.S. Reg. No. 1401045 (the "'045 Registration")

8   for AMIGA, covering "Computers, computer disk drives, ram expansion cartridges, computer

9   monitors, and computer modems," in class 9.

10      **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

11  **as to the truth of the allegations in this paragraph 92, and therefore denies them.**

12      93.     Until on or about October 24, 2018, the status of the Amiga corporate entity in the

13  State of Delaware was "VOID" for failure to pay franchise taxes.

14      **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

15  **as to the truth of the allegations in this paragraph 93, and therefore denies them.**

16      94.     On or about October 24, 2018, Amiga, Inc. was "revived" by payment of franchise

17  taxes and placed in "good standing" in the State of Delaware.

18      **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief**

19  **as to the truth of the allegations in this paragraph 94, and therefore denies them.**

20      95.     Under Delaware Code Title 8, § 312, Amiga, Inc. was revived with the same force

21  and effect as if its status had never been void, and all "contracts, acts, matters and things made,

22  done and performed within the scope of its certificate of incorporation by the corporation" are

23  thereby validated.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 37
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1   **RESPONSE: Hyperion is without information or knowledge sufficient to form a belief as to**

2   **the truth of the allegations in this paragraph 95, and therefore denies them.**

3       96.    On January 2, 2017, while Amiga, Inc. was in "void" status, Cloanto filed, on an

4   intent-to-use basis, Application Serial No. 87287078, for AMIGA, covering "Computer game

5   programs; Computer game software downloadable from a global computer network; Computer

6   hardware; Computer hardware and computer peripherals; Computer operating programs;

7   Computer operating software; Computer operating systems; Computer programs for video and

8   computer games; Computer software for emulating computer hardware, emulating computer

9   operating systems on personal computers and mobile devices and instructional user guides sold as

10  a unit; Computer software for emulating computer hardware, emulating computer operating

11  systems on personal computers and mobile devices that may be downloaded from a global

12  computer network; Computer software for emulating computer hardware, emulating computer

13  operating systems on personal computers and mobile devices; Computer software platforms for

14  emulating computer hardware and computer operating systems; Computer software, namely, game

15  engine software for video game development and operation; Computer software for emulating

16  computer hardware and computer operating systems that may be downloaded from a global

17  computer network; Digital media, namely, pre-recorded video cassettes, digital video discs, digital

18  versatile discs, downloadable audio and video recordings, DVDs, and high definition digital discs

19  featuring software, games, music, videos, text, eBooks; Downloadable computer game software

20  via a global computer network and wireless devices" in International Class 9 (the "'078

21  Application").

22      **RESPONSE: Responding to the allegations in this paragraph 96, Hyperion states that**

23  **the USPTO records appear to be consistent with the allegations with respect to the serial**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

**number, mark, filing date, identification of goods, and Applicant name, but show a different address for the Applicant than that indicated in Paragraph 4 of this Complaint, so Hyperion is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph 96, and therefore denies them. Hyperion also is without information or knowledge sufficient to form a belief as to the truth of the allegations concerning whether "Amiga, Inc. was in 'void' status", and therefore denies them.**

97.     In fact, Cloanto has used the AMIGA trademark substantially exclusively in commerce in the United States since 2012.

**RESPONSE: Hyperion denies the allegations of this paragraph 97.**

98.     Cloanto's '078 Application was published for opposition on May 9, 2017.

**RESPONSE: Hyperion admits the allegations in this paragraph 98 with respect to the '078 Application, but to the extent categorized as "Cloanto's '078 Application," is without information or knowledge sufficient to form a belief as to whether the Applicant at the listed address is the same entity as Cloanto and therefore denies the same, and to the extent the possessive "Cloanto's" is intended as a characterization of rightful ownership, denies that Cloanto is the rightful owner of any rights in the mark AMIGA.**

99.     On November 6, 2017, Hyperion timely (after permitted extensions) filed Opposition No. 91237628, claiming that Cloanto's applied-for AMIGA mark was confusingly similar to two of the Hyperion Licensed Marks that Hyperion sought to register on an intent-to-use basis on February 8, 2017, a month after Cloanto filed its '078 Application: AMIGAONE (Application Serial No. 87329448) and AMIGAOS (Application Serial No. 87329431).

**RESPONSE: Hyperion admits the allegations in this paragraph 99 that it filed the subject Applications and Opposition making, *inter alia*, the subject claim on the subject dates,**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

**and that the Applications and Opposition were assigned the subject numbers, but to the extent**

**categorized as "its [Cloanto's] '078 Application," is without information or knowledge**

**sufficient to form a belief as to whether the Applicant at the listed address is the same entity**

**as Cloanto and therefore denies the same, and to the extent the possessive "its" is intended**

**as a characterization of rightful ownership, denies that Cloanto is the rightful owner of any**

**rights in the mark AMIGA.**

100.    By signing Exhibit 3, Cloanto recognized, and continues to recognize, Hyperion's

right as licensee under the Settlement Agreement to "exclusive" use of AMIGA OS and AMIGA

ONE in connection with the marketing and distribution of AmigaOS 4.0, subject, however, to

Cloanto's Prior Rights that permit Cloanto to use "AmigaOS" and "Amiga operating system" in

connection with all Amiga operating systems prior to 4.0.

**RESPONSE: Hyperon denies the allegations of this paragraph 100.**

101.    Given Cloanto's Prior Rights and the fact that Hyperion was only granted a limited

license to use AMIGA OS and AMIGA ONE, Hyperion has no lawful claim to ownership or

registration of AMIGA, or to oppose Cloanto's application for AMIGA.

**RESPONSE: Hyperion denies the allegations of this paragraph 101.**

102.    If the Court finds that Amiga has for any reason relinquished or forfeited ownership

of the AMIGA mark, then Cloanto is the rightful owner of that mark, with the right to register same

in the United States.

**RESPONSE: Hyperion denies the allegations of this paragraph 102.**

103.    Hyperion's unauthorized use of AMIGA and AMIGAOS in connection with the

promotion, marketing and sale of AmigaOS Workbench 3.1, AmigaOS 3.1.3, and the 3.1.4

Products (i.e., "AmigaOS 3.1.4") and Kickstart ROM versions 3.1 and 1.3 (which also displays the

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1   AMIGA mark), and its unauthorized trademark applications to register AMIGA ONE and AMIGA

2   OS in the United States constitute trademark infringement on the AMIGA mark.

3          **RESPONSE: Hyperion denies the allegations of this paragraph 103.**

4          104.    Hyperion's unlawful conduct complained of herein was and is intended to capitalize

5   on the good will in AMIGA for Hyperion's own pecuniary gain.

6          **RESPONSE: Hyperion denies the allegations of this paragraph 104.**

7          105.    Hyperion's unlawful conduct complained of herein was and is (a) calculated to

8   confuse, deceive and mislead consumers into believing that such uses have been authorized by

9   Cloanto, and (b) intended to appropriate the AMIGA mark for itself as against Cloanto.

10         **RESPONSE: Hyperion denies the allegations of this paragraph 105.**

11         106.    Hyperion's unlawful conduct complained of herein has caused and unless enjoined

12   will continue to cause confusion among consumers as to the rightful ownership and use of the

13   AMIGA and the Hyperion Licensed Marks.

14         **RESPONSE: Hyperion denies the allegations of this paragraph 106.**

15         107.    Hyperion's acts complained of herein constitute unfair competition which, unless

16   enjoined by the Court, will result in (a) damage to and destruction and/or diversion of the good will

17   in AMIGA, and (b) unjust enrichment of Hyperion.

18         **RESPONSE: Hyperion denies the allegations of this paragraph 107.**

19

20                      **AS AND FOR A SEVENTH CAUSE OF ACTION**

21         **By Cloanto: Unfair Competition (15 U.S.C. § 1125(a); Lanham Act § 43(a))**

22         108.    Cloanto repeats and incorporates by reference each of the allegations contained in

23   paragraphs 91 through 107 of this Second Amended Complaint as if fully set forth herein.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 41
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1   **RESPONSE: Hyperion repeats and incorporates by reference each of the answers to**

2   **the allegations contained in paragraphs 1 through 107. In responding to these paragraphs**

3   **108-116, the Court, in its May 16, 2019 Order Granting in Part and Denying in Part**

4   **Defendant's Motion to Dismiss in Part, dismissed Cloanto's unfair competition claim against**

5   **Hyperion. Accordingly, Hyperion is not required to respond to the allegations of paragraphs**

6   **108-116.  To the extent Hyperion is required to respond, it denies the same.**

7       109.    The conduct of Hyperion complained of herein constitutes the use of symbols or

8   devices, or false designations of origin, false or misleading descriptions of fact, or false and

9   misleading representations of fact, which are likely to cause confusion, mistake, or deception

10  regarding the rights of Amiga and Hyperion in and to the ownership and use of AMIGA.

11      **RESPONSE: Hyperion denies the allegations of this paragraph 109.**

12      110.    Hyperion's conduct was undertaken willfully and with intent to cause confusion,

13  mistake, or deception on the part of the public.

14      **RESPONSE: Hyperion denies the allegations of this paragraph 110.**

15      111.    By engaging in the acts complained of herein, Hyperion has substantially damaged

16  the good will in the AMIGA mark.

17      **RESPONSE: Hyperion denies the allegations of this paragraph 111.**

18      112.    Hyperion's conduct has caused, and unless enjoined will continue to cause,

19  irreparable harm and injury to the good will in the AMIGA mark for which there is no adequate

20  remedy at law.

21      **RESPONSE: Hyperion denies the allegations of this paragraph 112.**

22      113.    Hyperion's conduct has also caused, and unless enjoined will continue to cause,

23  inevitable public confusion for which there is no adequate remedy at law.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 42
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion denies the allegations of this paragraph 113.**

2    114.    Pursuant to 15 U.S.C. § 1116, Cloanto is entitled to injunctive relief to enjoin

3    Hyperion from using AMIGA (including AMIGA OS) in any manner not expressly

4    authorized in the Settlement Agreement.

5    **RESPONSE: Hyperion denies the allegations of this paragraph 114.**

6    115.    Pursuant to 15 U.S.C. § 1117, Cloanto is entitled to recover damages in an amount

7    to be determined at trial.

8    **RESPONSE: Hyperion denies the allegations of this paragraph 115.**

9    116.    Hyperion's acts of unfair competition as alleged herein constitute an exceptional

10    case and were undertaken willfully, thereby entitling Cloanto to receive three times its actual

11    damages and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a) and (b).

12    **RESPONSE: Hyperion denies the allegations of this paragraph 116.**

13

14    **AS AND FOR AN EIGHTH CAUSE OF ACTION**

15    **By All Parties: for an Order Declaring that Hyperion is Not the Rightful Owner of Any**

16    **of the Marks for which Hyperion has Applied or been Granted Registration**

17    117.    Plaintiffs reallege and incorporate by reference each of the allegations contained in

18    paragraphs 1 through 116 of this Second Amended Complaint.

19    **RESPONSE: Hyperion repeats and incorporates by reference each of the answers to**

20    **the allegations contained in paragraphs 1 through 116.**

21    118.    Under the Settlement Agreement, Hyperion's rights in AMIGAOS, AMIGA OS,

22    AMIGAONE, AMIGA ONE, and the Boing Ball Mark are strictly limited to the licensed use of

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1  those marks in connection with the commercial exploitation of Amiga OS 4.0, future versions

2  thereof, (e.g., 5.0) and related hardware.

3      **RESPONSE: Hyperion admits that it entered into a Settlement Agreement in**

4  **September 2009 and affirmatively states that the agreement speaks for itself. On that basis,**

5  **Hyperion denies the allegations of this paragraph 118 to the extent they are inconsistent with**

6  **a proper interpretation of the 2009 Settlement Agreement. All other allegations in this**

7  **paragraph 118 are denied.**

8      119.    At no time did Hyperion acquire independent rights to use and register AMIGAOS,

9  AMIGA OS, AMIGAONE, or AMIGA ONE, which are confusingly similar to the AMIGA

10  trademark that Amiga, directly or by its predecessors-in-interest and licensees, has used

11  substantially and exclusively in commerce in the United States since the 1980s.

12      **RESPONSE: Hyperion denies the allegations of this paragraph 119.**

13      120.    At no time was Hyperion granted any rights to use POWERED BY AMIGAOS,

14  which is confusingly similar to Amiga's POWERED BY AMIGA mark.

15      **RESPONSE: Hyperion denies the allegations of this paragraph 120.**

16      121.    At no time was Hyperion granted any rights to use KICKSTART, which is owned

17  by Amiga.

18      **RESPONSE: Hyperion denies the allegations of this paragraph 121.**

19      122.    At no time was Hyperion granted any rights to use WORKBENCH in anything

20  other than an historical context (as the name of a desktop environment), which mark was owned

21  by Amiga until 2011, and thereafter by Cloanto.

22      **RESPONSE: Hyperion denies the allegations of this paragraph 122.**

23      123.    At no time was Hyperion granted any rights to use the AMIGA mark.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion denies the allegations of this paragraph 123.**

2    124.    At no time was Hyperion granted any rights to use AMIGA FOREVER, which has

3    been in use by Cloanto since 1997, and registered by Cloanto in 2011.

4    **RESPONSE: Hyperion denies the allegations of this paragraph 124.**

5    125.    Hyperion's trademark applications and registrations violate the Settlement

6    Agreement.

7    **RESPONSE: Hyperion admits that it entered into a Settlement Agreement in**

8    **September 2009 and affirmatively states that the agreement speaks for itself. On that basis,**

9    **Hyperion denies the allegations of this paragraph 125 to the extent they are inconsistent with**

10   **a proper interpretation of the 2009 Settlement Agreement. All other allegations in this**

11   **paragraph 125 are denied.**

12   126.    As parties to the Settlement Agreement and persons who believe they would be

13   damaged by Hyperion's registration of any of the Amiga Marks, Plaintiffs have standing to ask this

14   Court to grant declaratory relief with respect to the applications wrongfully filed and registrations

15   wrongfully obtained by Hyperion.

16   **RESPONSE: Hyperion denies the allegations of this paragraph 126.**

17   127.    Accordingly, Plaintiffs respectfully request that this Court declare that Hyperion is

18   not the rightful owner of, and must relinquish to Amiga (or in the case of WORKBENCH and

19   AMIGA FOREVER, to Cloanto), or withdraw or cancel, as applicable, the following applications

20   and registrations:

21       a.   U.S. App. No. 87329431 for AMIGAOS;

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1  **RESPONSE: This paragraph 127(a) does not appear to be intended to set forth**

2  **specific allegations of fact requiring a response; to the extent such allegations are intended,**

3  **Hyperion denies them.**

4      b.  U.S. App. No. 87329448 for AMIGAONE;

5  **RESPONSE: This paragraph 127(b) does not appear to be intended to set forth**

6  **specific allegations of fact requiring a response; to the extent such allegations are intended,**

7  **Hyperion denies them.**

8      c.  U.S. App. No. 87329469 for the "Boing Ball" Mark;

9  **RESPONSE: This paragraph 127(c) does not appear to be intended to set forth**

10  **specific allegations of fact requiring a response; to the extent such allegations are intended,**

11  **Hyperion denies them.**

12      d.  Benelux Reg. No. 1019369 for AMIGAONE;

13  **RESPONSE: This paragraph 127(d) does not appear to be intended to set forth**

14  **specific allegations of fact requiring a response; to the extent such allegations are intended,**

15  **Hyperion denies them.**

16      e.  Benelux Reg. No. 1019518 for AMIGA;

17  **RESPONSE: This paragraph 127(e) does not appear to be intended to set forth**

18  **specific allegations of fact requiring a response; to the extent such allegations are intended,**

19  **Hyperion denies them.**

20      f.  Benelux Reg. No. 1354122 for the "Boing Ball" Mark;

21  **RESPONSE: This paragraph 127(f) does not appear to be intended to set forth**

22  **specific allegations of fact requiring a response; to the extent such allegations are intended,**

23  **Hyperion denies them.**

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 46
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1          g.   Benelux Reg. No. 1014998 for KICKSTART;

2          **RESPONSE: This paragraph 127(g) does not appear to be intended to set forth**

3     **specific allegations of fact requiring a response; to the extent such allegations are intended,**

4     **Hyperion denies them.**

5          h.   Benelux Reg. No. 1010723 for AMIGAOS;

6          **RESPONSE: This paragraph 127(h) does not appear to be intended to set forth**

7     **specific allegations of fact requiring a response; to the extent such allegations are intended,**

8     **Hyperion denies them.**

9          i.   Benelux Reg. No. 1009642 for AMIGA FOREVER;

10         **RESPONSE: This paragraph 127(i) does not appear to be intended to set forth specific**

11    **allegations of fact requiring a response; to the extent such allegations are intended, Hyperion**

12    **denies them.**

13         j.   Benelux Reg. No. 1008486 for WORKBENCH;

14         **RESPONSE: This paragraph 127(j) does not appear to be intended to set forth**

15    **specific allegations of fact requiring a response; to the extent such allegations are intended,**

16    **Hyperion denies them.**

17         k.   France App. No. D. 18 4475019 for KICKSTART;

18         **RESPONSE: This paragraph 127(k) does not appear to be intended to set forth**

19    **specific allegations of fact requiring a response; to the extent such allegations are intended,**

20    **Hyperion denies them.**

21         l.   Germany Reg. No. 302017113262 for AMIGA;

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: This paragraph 127(l) does not appear to be intended to set forth specific**

2    **allegations of fact requiring a response; to the extent such allegations are intended, Hyperion**

3    **denies them.**

4         m.  Italy App. No. 302018000027648 for KICKSTART;

5    **RESPONSE: This paragraph 127(m) does not appear to be intended to set forth**

6    **specific allegations of fact requiring a response; to the extent such allegations are intended,**

7    **Hyperion denies them.**

8         n.  Spain App. No. 3718535 M7 for KICKSTART;

9    **RESPONSE: This paragraph 127(n) does not appear to be intended to set forth**

10   **specific allegations of fact requiring a response; to the extent such allegations are intended,**

11   **Hyperion denies them.**

12        o.  EUTM Reg. No. 16745093 for AMIGA FOREVER;

13   **RESPONSE: This paragraph 127(o) does not appear to be intended to set forth**

14   **specific allegations of fact requiring a response; to the extent such allegations are intended,**

15   **Hyperion denies them.**

16        p.  EUTM Reg. No. 16733024 for AMIGAOS;

17   **RESPONSE: This paragraph 127(p) does not appear to be intended to set forth**

18   **specific allegations of fact requiring a response; to the extent such allegations are intended,**

19   **Hyperion denies them.**

20        q.  EUTM 16732208 for WORKBENCH; and

21   **RESPONSE: This paragraph 127(q) does not appear to be intended to set forth**

22   **specific allegations of fact requiring a response; to the extent such allegations are intended,**

23   **Hyperion denies them.**

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 48
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    r.    any other trademark application or registration anywhere in the world of the

2    Amiga Marks, WORKBENCH or AMIGA FOREVER.

3    **RESPONSE: This paragraph 127(r) does not appear to be intended to set forth**

4    **specific allegations of fact requiring a response; to the extent such allegations are intended,**

5    **Hyperion denies them.**

6

7    **AS AND FOR AN NINTH CAUSE OF ACTION**

8    **By All Parties: for an Order Directing the USPTO to Deny Opposition No. 91237628**

9    128.    Plaintiffs reallege and incorporate by reference each of the allegations contained in

10   paragraphs 1 through 127 of this Second Amended Complaint.

11   **RESPONSE: Hyperion repeats and incorporates by reference each of the answers to**

12   **the allegations contained in paragraphs 1 through 127.**

13   129.    Hyperion's Opposition No. 91237628 is premised on two falsehoods: first, that

14   Hyperion has the right to use the AMIGA trademark; and second, that Cloanto could or would use

15   its rights to prevent Hyperion from exercising its rights to use AMIGA OS or AMIGA ONE.

16   **RESPONSE: Hyperion denies any allegations of this paragraph 129 that state the**

17   **premise of Hyperion's Opposition, and affirmatively states that the allegations of the**

18   **Opposition speak for themselves, such that Hyperion denies any allegations in this paragraph**

19   **129 that are inconsistent with a proper reading of Hyperion's Opposition.**

20   130.    The Settlement Agreement expressly precludes Hyperion from attacking any

21   AMIGA mark on the basis that it is confusingly similar to AMIGA OS or AMIGA ONE.

22   **RESPONSE:  Responding to this paragraph 130, Hyperion states that the Settlement**

23   **Agreement speaks for itself, and to the extent these allegations are inconsistent with a proper**

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1   **interpretation of the 2009 Settlement Agreement, Hyperion denies them. All other allegations**

2   **in this paragraph are denied.**

3        131.    By operation of Section 2 of the Settlement Agreement, Hyperion agreed that it

4   would never challenge "the use and/or ownership of any Amiga Mark (other than [the Hyperion

5   Licensed Marks]) by any … licensee …unless the challenged activity constitutes a material reach

6   of this Agreement …" by such licensee.

7        **RESPONSE: Hyperion admits that it entered into a Settlement Agreement in**

8   **September 2009 and affirmatively states that the Settlement Agreement speaks for itself. On**

9   **that basis, Hyperion denies the allegations of this paragraph 131 to the extent they are**

10  **inconsistent with a proper interpretation of the 2009 Settlement Agreement. All other**

11  **allegations in this paragraph 131 are denied.**

12       132.    Registration of the AMIGA mark by Plaintiff Cloanto, does not constitute a breach

13  of the Settlement Agreement and does not prevent Defendant from continuing to use the Hyperion

14  Licensed Marks, because Cloanto has signed Exhibit 3, which obligates Cloanto not to interfere

15  with any rights of Hyperion under the Settlement Agreement.

16       **RESPONSE: Hyperion denies the allegations of this paragraph 132.**

17       133.    .At no time has Cloanto ever interfered with any rights that Hyperion was granted

18  under the Settlement Agreement.

19       **RESPONSE: Hyperion denies the allegations of this paragraph 133.**

20       134.    Accordingly, in order for Plaintiffs to receive complete relief of their unfair

21  competition claims against Hyperion, as well as for the sake of judicial economy, Plaintiffs seek

22  an order from this Court directing the TTAB to deny Hyperion's Opposition no. 91237628.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **RESPONSE: Hyperion denies the allegations of this paragraph 134, and further states**

2    **that the Court, in its May 16, 2019 Order Granting in Part and Denying in Part Defendant's**

3    **Motion to Dismiss in Part, dismissed Cloanto's unfair competition claim against Hyperion.**

4

5                                    **PRAYER FOR RELIEF**

6    WHEREFORE, Plaintiffs pray that this Court enter judgment against Hyperion as follows:

7         A.    Granting Plaintiffs a preliminary and permanent injunction enjoining Hyperion,

8    together with its officers, agents, servants, employees, assigns, successors and attorneys, and all

9    other persons acting in concert with any of them from:

10              i.    using AMIGA OS, AMIGAOS, AMIGAONE, AMIGA ONE and/or the

11                    "Boing Ball" mark for any purpose other than the distribution, marketing, and sale

12                    of Amiga OS4.0, subsequent versions and related hardware;

13              ii.   using AMIGA, POWERED BY AMIGA, POWERED BY AMIGAOS,

14                    KICKSTART and/or WORKBENCH for any purpose, including but not limited to

15                    use on merchandise;

16              iii.  using false copyright notices and claiming it is the owner and author of

17                    rights that were never granted or only granted by limited license;

18              iv.   registering or attempting to register, anywhere in the world, the marks

19                    AMIGA, KICKSTART, WORKBENCH, AMIGA OS, AMIGAOS, AMIGAONE,

20                    AMIGA ONE and/or the Boing Ball mark and any AMIGA-formative mark,

21                    including but not limited to POWERED BY AMIGAOS.

22         B.    Ordering the recall from the marketplace and destruction or other reasonable

23    disposition of all unauthorized products, including but not limited to all 3.1.4 Products, releases of

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 51
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1  Amiga operating system 3.1, and products that include Kickstart 1.2, 1.3, and 3.1;

2      C.    Directing Hyperion to account for and pay over to the Amiga Parties all gains and

3  profits derived by Hyperion as a consequence of its breach of the Settlement Agreement;

4      D.    Directing Hyperion to account for and pay over to Cloanto all gains and profits

5  derived by Hyperion as a consequence of its infringement of Cloanto's copyrights, pursuant to 17

6  U.S.C. § 504;

7      E.   Awarding Cloanto maximum statutory damages, pursuant to 17 U.S.C. § 504 and

8  17 U.S.C. § 1203;

9      F.    Awarding Cloanto an increased award of statutory damages upon a finding that

10  Hyperion's infringement was committed willfully, pursuant to 17 U.S.C. § 504(c)(2);

11      G.    Awarding Cloanto an increased award of statutory damages as provided in

12  17 U.S.C. § 1203;

13      H.    Awarding Plaintiffs attorneys' fees incurred in investigating, bringing, and

14  prosecuting this action;

15      I.    Pursuant to 15 U.S.C. § 1117(a), awarding Plaintiffs treble damages for Hyperion's

16  acts of common law infringement;

17      J.    Declaring that Hyperion is not the rightful owner of, and that Hyperion must

18  relinquish to Amiga (or in the case of WORKBENCH and AMIGA FOREVER, to Cloanto), or

19  withdraw or cancel, as applicable, the following applications and registrations: (1) U.S. App. No.

20  87329431 for AMIGAOS; (2) U.S. App. No. 87329448 for AMIGAONE; (3) U.S. App. No.

21  87329469 for the Boing Ball Mark; (4) Benelux Reg. No. 1019369 for AMIGAONE; (5) Benelux

22  Reg. No. 1019518 for AMIGA; (6) Benelux Reg. No. 1354122 for the Boing Ball Mark; (7)

23  Benelux Reg. No. 1014998 for KICKSTART; (8) Benelux Reg. No. 1010723 for AMIGAOS; (9)

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

Benelux Reg. No. 1009642 for AMIGA FOREVER; (10) Benelux Reg. No. 1008486 for WORKBENCH; (11) France App. No. D. 18 4475019 for KICKSTART; (12) Germany Reg. No. 302017113262 for AMIGA; (13) Italy App. No. 302018000027648 for KICKSTART; (14) Spain App. No. 3718535 M7 for KICKSTART; (15) EUTM Reg. No. 16745093 for AMIGA FOREVER; (16) EUTM Reg. No. 16733024 for AMIGAOS; and (17) EUTM 16732208 for WORKBENCH.

K.    Awarding the Plaintiffs costs and disbursements of this action;

L.    Awarding the Plaintiffs pre- and post-judgment interest on any monetary award, including any award of attorneys' fees; and

M.    Awarding the Plaintiffs, such other, further, or different relief as this Court may deem just and proper.

**RESPONSE: This Prayer for Relief does not include factual allegations requiring a response. To the extent Plaintiffs intend to allege facts, Hyperion denies them.**

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Plaintiffs request a trial by jury on all issues so triable.

**RESPONSE: This Demand for Jury Trial does not include factual allegations requiring a response. To the extent Plaintiffs intend to allege facts, Hyperion denies them.**

## HYPERION'S AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(b), Hyperion asserts the following affirmative defenses to Plaintiff's Second Amended Complaint; Hyperion expressly reserves all rights to assert additional affirmative defenses that arise upon further investigation, discovery, or facts otherwise revealed:

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 53
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

A.     Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted.

B.     Plaintiffs lack standing to pursue the claims alleged, or Plaintiffs are not the real party in interest as to the claims alleged.

C.     Hyperion is licensed or otherwise fully authorized to make use of intellectual property rights described in Plaintiffs' Second Amended Complaint, whether such rights constitute copyrighted software, registered or unregistered trademark, or other forms of intellectual property right.

D.     Hyperion has not infringed any valid and enforceable trademark right belonging to Plaintiffs.

E.     Hyperion has not infringed any valid and enforceable copyright belonging to Plaintiffs.

F.     Plaintiffs' claims are barred by any applicable statute of limitations.

G.     Plaintiffs' claims are barred by the equitable doctrine of laches, or Plaintiffs have waived or are estopped from asserting their claims, or such claims are barred because Plaintiffs or their predecessor have acquiesced in Hyperion's use of intellectual property rights asserted.

H.     Plaintiffs' claims are barred by the doctrine of unclean hands.

I.     Plaintiffs' claims are barred by explicit language in the 2009 Settlement Agreement, which provides Hyperion with an exclusive, perpetual, worldwide and royalty-free, transferable right and license to use the Exclusive Licensed Marks and the Software.

J.     The various Amiga and Amiga-related marks were cancelled or invalidated by the USPTO for failure to submit a declaration for renewal under Section 8 of the Trademark Act, and the registrations were removed from the registry.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

K.    Plaintiff Amiga, Inc.'s application for the mark AMIGA, Serial No. 78940417 was refused, dismissed, or invalidated by the USPTO for failure to submit a statement of use for any of the claimed goods and services, and subsequently went abandoned on September 19, 2011 for failure to file a statement of use.

L.    Plaintiff Amiga, Inc.'s application for the mark AMIGA, Serial No.78940426 was refused, dismissed, or invalidated by the USPTO and subsequently abandoned on September 19, 2011 for failure to file a statement of use.

M.    Plaintiff Amiga, Inc.'s application for the mark AMIGA ANYWHERE, Serial No. 78942544 was refused, dismissed, or invalidated by the USPTO and subsequently abandoned on September 19, 2011 for failure to file a statement of use.

N.    Plaintiff Amiga, Inc.'s application for the mark AMIGA ENABLED, Serial No. 78942551, was refused, dismissed, or invalidated by the USPTO and subsequently abandoned on September 19, 2011 for failure to file a statement of use.

O.    Plaintiffs have abandoned any common law rights to any of the AMIGA or Amiga-related marks through naked licensing. Plaintiffs have no license agreements sufficient to show quality control of their purported marks or to show that they are entitled to make use of the associated source codes.

P.    Cloanto Italia srl is a separate entity and not a predecessor to Cloanto Corporation such that rights, if any, claimed by Cloanto Italia srl by virtue of the 2009 Settlement Agreement cannot be asserted by Cloanto Corporation.

## PRAYER FOR RELIEF

Wherefore, having answered, Hyperion prays the Court for its judgment that Plaintiffs are not

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 55
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

entitled to any relief requested and therefore denying any such relief, that Plaintiffs shall take nothing by their Second Amended Complaint, that Hyperion be awarded its costs, expert witness fees, and attorneys' fees, and for such other and further relief as the Court may deem just and proper.

## HYPERION'S COUNTERCLAIMS

Counterclaim Plaintiff Hyperion Entertainment C.V.B.A. ("Hyperion"), by and through its attorneys, and for its Counterclaims against Counterclaim Defendants Itec, LLC ("Itec"), Amiga, Inc. ("Amiga"), Amino Development Corporation ("Amino") (Itec, Amiga, and Amino are collectively referred to as the "Amiga Parties") and Cloanto Corporation ("Cloanto") (all of the foregoing collectively referred to as "Counterclaim Defendants"), states and alleges the following:

## NATURE OF THE ACTION

1.      This is a counterclaim to establish rights in intellectual property assets arising from a 2009 Settlement Agreement entered via Stipulated Judgment by the Honorable Ricardo S. Martinez of this Court on December 14, 2009, in the matter of *Amiga, Inc. v. Hyperion VOF*, 2:07-cv-00631-RSM ("the Prior Washington Action"). A copy of the Stipulated Judgment including the Settlement Agreement is attached as Exhibit 1.

2.      The Settlement Agreement states in paragraph 16: "The Parties agree that any dispute arising from the interpretation or enforcement of this Agreement shall be resolved solely through litigation in the U.S. District Court for the Western District of Washington." Ex. 1 at p. 36.

3.      On information and belief, the Amiga Parties are in material breach and/or default of the Settlement Agreement.  Further, certain actions or inactions by the Amiga Parties require the

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 56
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

Court's interpretation and enforcement of the Settlement Agreement. Still further, actions of all Counterclaim Defendants have caused injury to Hyperion for which Hyperion has no adequate remedy at law, thereby compelling Hyperion to bring these counterclaims.

## **PARTIES**

4.    Hyperion is a Belgian limited liability corporation having a principal place of business at Tervueren 34, 1040 Brussels, Belgium.

5.    On information and belief, Counterclaim Defendant Itec is a New York limited liability company having a business address c/o Reed Smith LLP, 599 Lexington Avenue, 29th Floor, New York, NY 10022.

6.    On information and belief, Counterclaim Defendant Amiga is or was a Delaware corporation having as its registered agent the Corporation Service Company, of 251 Little Falls Drive, Wilmington, DE 19808, and has or had its administrative seat at 34935 SE Douglas Street, Snoqualmie, WA 98065, UBI 602621140.

7.    On information and belief, Counterclaim Defendant Amino is an inactive Washington corporation having as its registered agent the Corporation Service Company, having an address of 300 Deschutes Way SW, Ste. 304, Tumwater, WA 98501, UBI 601983734.

8.    On information and belief, Counterclaim Defendant Cloanto is a Nevada corporation having an address of 5940 S. Rainbow Blvd, Suite 400 #67834, La Vegas, NV 891187-2507.

## **JURISDICTION AND VENUE**

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 57
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

9.    This Court has jurisdiction over the subject matter of this action pursuant to the provisions of 28 U.S.C. §§ 1331, 1338, and 2201; 17 U.S.C. § 501; and 15 U.S.C. §§ 1121, 1125, in that this action arises under the copyright and trademark laws of the United States, and Hyperion seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, injunctive relief, and equitable relief for breach of contract, and for intentional interference with contract or business expectancy, under the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10.    This Court has personal jurisdiction over the Amiga Parties because the Amiga Parties and Hyperion are parties to the Settlement Agreement, which expressly provides in ¶ 16 that any disputes relating thereto shall be resolved "solely through litigation in the U.S. District Court for the Western District of Washington."

11.    This Court has personal jurisdiction over Cloanto, because in this action, Cloanto repeatedly asserts its own interpretation of the Settlement Agreement, thereby admitting that Cloanto's claims rest on interpretation of the Settlement Agreement. Further, on information and belief, Cloanto conducts and has conducted business in the State of Washington, including but not limited to business transactions with the Amiga Parties, which transactions give rise to the dispute in this case. Additionally, on information and belief, Cloanto has advertised and sold and continues to advertise and sell products within this judicial district, including Cloanto's "Amiga Forever" operating system emulator, which is offered through Cloanto's "Online Store" at www.amigaforever.com. On information and belief, the "Amiga Forever" product and other Cloanto products incorporate Amiga IP that is the subject of the Settlement Agreement. On information and belief, the "Amiga Forever"product has been downloaded by purchasers in this district, and has been shipped by Cloanto on physical media to buyers in this district, in

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1  combination with DVD video content. Cloanto purposefully directs its advertising and

2  promotional activities to buyers in this district.

3       12.    Venue is proper in this district under 28 U.S.C. § 1391.

4                          **FACTUAL BACKGROUND**

5  **A.    History through the Settlement Agreement**

6       13.    The **Amiga** operating system software, originally developed by Commodore for its

7  line of Amiga computers, has been credited as having launched the multi-media computing

8  revolution in 1987.

9       14.    Hyperion is the developer of an Amiga operating system known as AmigaOS 4.

10      15.    Through a chain of subsequent events, various intellectual property rights relating

11 to Amiga software, including trademark and copyright rights, ("the Amiga IP") became subject

12 to a hotly contested dispute, the facts and allegations of which are of record in the Prior

13 Washington Action, which allegations were resolved between Hyperion and the Amiga Parties via

14 the Settlement Agreement.

15      16.    The Amiga IP addressed in the Settlement Agreement includes:

16          a.   "Amiga Mark," as defined in Definition c. of the SettlementAgreement to

17               mean "any mark owned and/or registered or licensed by or to the Amiga Parties

18               containing the word "Amiga" whether instylized form (figurative mark) or

19               otherwise."

20          **b.**  "Exclusive Licensed Marks," as defined in Definition g. of the Settlement

21               Agreement to mean **AmigaOS**, **Amiga OS**, **AmigaOne**,and **Amiga One.**

22          c.   "Software," as defined in Definition n. of the Settlement Agreement to mean

23               "Amiga OS 3.1 Software, which is the Operating system(including without

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

limitation its Software Architecture as described in the Documentation[1])

originally developed, owned and marketedby Commodore Business Machines

(CMB) for their Amiga line of computers in 1994."

d. "Documentation," as defined in Definition f. of the SettlementAgreement to

mean "the publications listed on Exhibit 4 hereof [to the Settlement

Agreement]"

e. "Licensed Marks," as defined in Definition i. of the SettlementAgreement to

mean "the Exclusive Licensed Marks and the "Boing Ball" logo mark (*i.e.* the

checkered ball)" (depicted *infra*).

f. "AmigaOS 4," as defined in Definition d. of the SettlementAgreement to

mean "the Operating System developed by Hyperion and based in part on the

Software, including without limitation the Software Architecture of the

Software as described in the Documentation, in any version, (irrespective of

version numbering,e.g., AmigaOS 5).

*See* Exhibit 1 at pp. 29-30.

17.    Pursuant to the grant clause in paragraph 1(b), the Settlement Agreement grants

Hyperion:

…an exclusive, perpetual, worldwide and royalty-free, transferable right and Object Code  and

Source Code license to the Software in order to use, develop, modify, commercialize, distribute

and market the Software in any form (including through sublicensing), on any medium (now

known or otherwise), through any means (including but not limited to making AmigaOS 4

available to the public via the internet) and for any current or future hardware platform.

*Id.*at p. 31.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

18.     Pursuant to the grant clause in paragraph 1(c), the Settlement Agreement grants Hyperion "an exclusive, perpetual, worldwide and royalty-free, transferable right and license to use the Exclusive Licensed Marks and the Software." *Id.* at p. 32.

19.     Paragraph 7 of the Settlement Agreement contains Hyperion's express reservation of independent rights to the Licensed marks, which states that nothing in the Settlement Agreement "shall be construed as a waiver or abandonment" thereof. *Id.* at p. 35.

20.     Paragraph 18 of the Settlement Agreement grants Hyperion a Security Interest in "Collateral" -- defined in Definition e. of the Settlement Agreement to mean "the Exclusive Licensed Marks, the Software, and the 'Boing Ball' logo mark." *Id.* at pp. 37, 29.

21.     Paragraph 18(c) of the Settlement Agreement confers upon and entitles Hyperion to foreclose on the Security Interest in the Collateral in the event of a default by the Amiga Parties and an acquirer . . . of . . . assets including the Collateral. *Id*. at p. 38.

22.     Specifically, Paragraph 18(c) of the Settlement Agreement states that "[i]f an acquirer or buyer of stock or assets including the Collateral (or part thereof) under §15[2] refuses to execute the appropriate form of Exhibit 3[3] hereto prior to or at the closing of the acquisition or purchase, then the Amiga Parties and the acquirer or buyer will be deemed to be in default under the terms of this Agreement. Hyperion is then authorized to foreclose on its Security Interest in the Collateral." *Id*.

23.     Paragraph 13 of the Settlement Agreement confers upon Hyperion a power to enforce its rights in the Exclusive Licensed Marks, the Software, and the Boing Ball Logo Mark in the event of the Amiga Parties elect not to, or do not, exercise such rights. *Id.* at p. 35.

24.     The rights granted to Hyperion by the Settlement Agreement were, in accordance with Paragraph 1(b), "[w]ithout prejudice to any Existing License Agreement," wherein the term

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1  Existing License Agreement is defined in Definition h. of the Settlement Agreement as having been

2  provided in a "complete and exhaustive list attached to [the Settlement Agreement] as Exhibit 1."

3  *Id.* at pp. 31.

4       25.    Exhibit 1 to the Settlement Agreement lists a license to "Cloanto Italia srl" for

5  "various licenses commencing in 1994" for an "indefinite term," listing a "worldwide" territory,

6  and a scope of "[r]ights sufficient to support Amiga Forever, including emulation modules." *Id.*

7  at p. 44.

8       26.    Pursuant to the "Non-Aggression" clause in Paragraph 2 of the Settlement

9  Agreement, Hyperion is permitted to challenge "the use and/or ownership of any Amiga Mark (other

10  than an Exclusive Licensed Mark) by any Amiga Party or any licensee or successor to any Amiga

11  Party" when "the challenged activity constitutes a material breach of [the Settlement Agreement],

12  including but not limited to any material infringement by the Amiga Parties, by a successor to any

13  Amiga Party, by a Purchaser or by a licensee of the licenses granted to Hyperion pursuant to this

14  Agreement." *Id.* at p. 33.

15  **B.**    **Hyperion's business**

16       27.    Hyperion is a privately held Belgian limited liability corporation, founded on 25

17  February, 1999, and was previously known as Hyperion Entertainment VOF (the named defendant

18  in the Prior Washington Action).

19       28.    Hyperion specializes *inter alia* in 3D graphics and 3D driver development, firmware

20  development for embedded systems, IT consulting and the conversion of high quality entertainment

21  software from Windows to niche platforms including Amiga, Linux and MacOS and thus develops

22  entertainment software for the Linux, MacOS and **AmigaOS** operating systems.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 62
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

29.    Since well before entering into the Settlement Agreement in 2009, Hyperion has been actively developing **AmigaOS** 4.x, an almost complete rewrite for modern times of the legendary Amiga operating system which exhibits a nearly complete backward compatibility with the Software.

30.    **AmigaOS** 4.x runs on several PowerPC based hardware platforms including original Amigas with PowerPC accelerator cards and the stand-alone **AmigaOne**, SAM, Pegasos II platforms as well as the **AmigaOne** X5000.

**C.    Lapse of the Amiga Registration and filing by Cloanto**

31.    On information and belief, Amino has been administratively dissolved, terminated, or no longer has good standing in its jurisdiction of formation. On information and belief, Itec remains in good standing. Amiga asserts it has been reconstituted, an assertion Hyperion denies on information and belief.

32.    Hyperion has no knowledge as to whether Amiga or Amino have the capacity to be reinstituted, or as to the disposition of any assets formerly owned by Amiga or Amino. Amiga was the listed owner of, *inter alia*, U.S. Trademark Registration No. 1,401,045 ("the '045 Registration"), registered July 15, 1986, for the mark **AMIGA** in connection with: *"Computers, computer disk drives, ram expansion cartridges, computer monitors, and computer modems"* in class 9.

33.    The '045 Registration was renewed for additional 10-year terms in 1996 and 2006, but it was not renewed in 2016, and the 6-month grace period for renewal expired on December 15, 2016.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

34.    Because the '045 Registration was the sole remaining registration for an AMIGA-formative mark owned by Amiga in the United States, its lapse created a void that was quickly filled.

35.    On January 2, 2017, Cloanto filed U.S. Application Ser. No. 87/287,078 ("the Cloanto Application") for the mark **AMIGA** in connection with:

> Computer game programs; Computer game software downloadable from a globalcomputer network; Computer hardware; Computer hardware and computer peripherals; Computer operating programs; Computer operating software;Computer operating systems; Computer programs for video and computer games;Computer software for emulating computer hardware, emulating computeroperating systems on personal computers and mobile devices and instructional user guides sold as a unit; Computer software for emulating computer hardware, emulating computer operating systems on personal computers and mobile devices that may be downloaded from a global computer network; Computer software for emulating computer hardware, emulating computer operating systems on personal computers and mobile devices; Computer software platforms for emulating computer hardware and computer operating systems; Computer software, namely, game engine software for video game development and operation; Computersoftware for emulating computer hardware and computer operating systems that may be downloaded from a global computer network; Digital media, namely, pre-recorded video cassettes, digital video discs, digital versatile discs, downloadable audio

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    *and video recordings, DVDs, and high definition digital discs*

2    *featuringsoftware, games, music, videos, text, ebooks; Downloadable*

3    *computer game software via a global computer network and wireless*

4    *devices* in Class 9.

5    **D.    HYPERION'S TRADEMARK FILINGS**

6    36.    Recognizing that Hyperion's rights to the Exclusively Licensed Marks had been

7    materially compromised by the lapse of the '045 Registration and would be even further prejudiced

8    by potential registration of the Cloanto Application unchallenged, Hyperion made several

9    trademark filings on February 8, 2017, to preserve its rights, including:

10    a.    U.S. Trademark Application Ser. No. 87/329,448 for **AmigaOne,** in

11    connection with:

12    *Computer hardware; computers; Central processing units*

13    *(CPU);motherboards*, in Class 9; and *Promotion, advertising and*

14    *marketing of on-line websites of others in the field of computer*

15    *hardware and software; Providing on-line web directory services*

16    *featuring hyperlinks to the websites of others,*in Class 35**.**

17    b.    U.S. Trademark Application Ser. No. 87/329,431 for **AmigaOS,** in

18    connection with:

19    *Computer operating programs and computer operating systems;*

20    *Software development kits (SDK); Computer software development*

21    *tools,* in Class 9; and *On-line retail store services*

22    *featuring computer software;Promotion, advertising and*

23    *marketing of on-line websites of others in the field of computer*

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

*hardware and software; Providing on-line web directory services*

*featuring hyperlinks to the websites of others,* in Class 35.

   c.   U.S. Trademark Application Ser. No. 87/329,469, for the "**Boing**

**Ball logo**" (depicted below) in connection with:



*Computer operating programs and computer operating systems;*

*Softwaredevelopment kits (SDK); Computer software development*

*tools; Computer hardware; computers; Central processing units*

*(CPU); motherboards,* in Class 9; and

*On-line retail store services featuring computer software;*

*Promotion,advertising and marketing of on-line websites of others*

*in the field ofcomputer hardware and software; Providing on-line*

*web directory services featuring hyperlinks to the websites of others,*

in Class 35.

**E.   Hyperion's communications with the Amiga Parties**

     37.   On or about March 2, 2017, Hyperion also contacted the last known officer of Amiga and Amino, former CEO Mr. Bill McEwen in hopes of resolving its concerns about the lapse of the '045 Registration and the filing of the Cloanto Application. Mr. McEwen represented that he was in contact with the shareholders of Amiga and would relay Hyperion's concerns and proposed resolution.

     38.   On March 31, 2017, having not resolved its concerns, Hyperion sent a letter to Itec.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

39.    As part of an exchange of communications between Hyperion and Itec that followed, Hyperion expressly inquired in a letter dated April 17, 2017 ("the April 17 letter"), whether "the Amiga Parties has granted, under the terms of its license to Cloanto or otherwise, any rights or authorizations to Cloanto to file for a U.S. trademark application for AMIGA in Cloanto's name." The April 17 letter further advised that in the absence of such authority, Cloanto's attempt to register was an infringement of the AMIGA mark, and that the April 17 letter served as notice of such infringement.

40.    As part of the exchange of communications between Hyperion and Itec, Itec orally represented to Hyperion that Amiga was still a going concern, which representation was documented in the April 17 letter and not subsequently contradicted by Itec.

41.    Despite Hyperion's express request in the April 17 letter that Itec provide a chain of title for the disposition of the Exclusive Licensed Marks and "[a] copy of Exhibit 3 as executed by each and every current owner of the Licensed Marks, the Amiga Mark, and/or the Collateral, if not one of the Amiga Parties already a signatory to the Settlement Agreement," Hyperion received no response from Itec to this request.

42.    Hyperion did not receive, and Cloanto did not sign, form Exhibit 3 "prior to or at the closing of the acquisition or purchase" of any purported rights to the Licensed Marks, the Amiga Mark, and/or the Collateral, as required by Paragraph 18(c) of the Settlement Agreement.

43.    Hyperion also informed Itec via the April 17 letter that it considered the failure to renew the AMIGA registrations in the U.S. to be a material breach of the Settlement Agreement.

F.    **Oppositions filed against the Cloanto Application**

44.    The Cloanto Application was published for opposition on May 9, 2017.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 67
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1        45.     Having not received a response from Itec to its April 17 letter, Hyperion sent Itec

2    a communication on May 9, 2017, serving "notice to Itec and Amiga that Cloanto's application

3    to register AMIGA was published for opposition on May 11, 2017, and failure to file a Notice

4    of Opposition or Extension of Time to file a Notice of Opposition before the end of the 30-

5    day opposition period will only further prejudice Hyperion's rights."

6        46.     Itec and Hyperion both timely filed for 90-day Extensions of Time to Oppose the

7    Cloanto Application and subsequently filed for additional 60-day Extensions of Time to Oppose,

8    with the consent of Cloanto.

9        47.     Itec commenced Opposition No. 91237599 ("the Itec Opposition") with the United

10    States Patent and Trademark Office (USPTO) Trademark Trial and Appeal Board (TTAB) on

11    November 6, 2017, by filing a Notice of Opposition alleging as grounds for the opposition that Itec

12    "is the majority shareholder in Amiga, Inc. ("Amiga"), the owner of the famous trademark AMIGA

13    for computers, software, and related products" that as such, it is "directly affected by any actions

14    which may adversely impact the business operations of Amiga and Amiga's assets, including the

15    famous trademark and trade name AMIGA."

16        48.     Notably absent from Itec's Notice of Opposition was any allegation that Itec is the

17    owner of the AMIGA trademark and any explanation as to why Amiga, Inc. did not file for the

18    extensions of time and the opposition in its own name.

19        49.     Having received no answers from Itec to Hyperion's inquiries regarding current

20    ownership of the Amiga IP, and therefore not confident Itec would ultimately be able to demonstrate

21    standing to oppose, Hyperion timely filed Opposition No. 91237628 ("Hyperion's Opposition")

22    with the USPTO TTAB on November 6, 2017, to preserve rights.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 68
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

50.    On November 20, 2017, Cloanto filed a stipulated motion in the Itec Opposition, seeking an extension of time for Cloanto to Answer the Notice of Opposition until March 13, 2018, which motion was granted by the TTAB on November 21, 2017.

51.    Cloanto initiated an action in New York (the "New York Action") (subsequently transferred to this Court under case number 2:18-cv-00381-JLR and consolidated under this case number, 2:18-cv-00381-RSM) against Hyperion, and on December 17, 2017, filed a Motion to Stay the Hyperion Opposition pending the outcome of the New York Action, which motion Hyperion did not oppose, and which motion was granted by the TTAB on January 20, 2018.

52.    In this action, Cloanto alleges at ¶ 26(b) that it acquired ownership of the copyright in and to Kickstart 1.3, an AMIGA program whose copyright was registered on September 6, 1991, TX0003282574.

53.    In ¶ 10 of the New York Action, Cloanto previously admitted "Kickstart 1.3 may be used to run a majority of AMIGA games created and sold prior to 1994, and ***some of them cannot run without it***." (Emphasis added)

54.    Cloanto's copyright claim in this action is based upon Cloanto's allegations that Hyperion has been distributing, marketing and selling CD-ROMs that include Hyperion's Kickstart 1.3, which allegation of infringement relies upon Cloanto's interpretation of the Settlement Agreement as prohibiting Hyperion from distributing Kickstart 1.3.

55.    However, the copyrightable content of Kickstart 1.3 is subsumed within the Software and Software Architecture to which the Settlement Agreement grants Hyperion an exclusive license (subject to the Existing License Agreements listed in Exhibit 1 of the Settlement Agreement). Specifically, each version of AmigaOS (which consists of two components, "Kickstart" and "Workbench") has the same "Software Architecture" as documented in the Documentation and

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 69
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

as defined in Definition o. of the Settlement Agreement to mean "the structure or structures of the system, which comprise software components (i.e., those assumptions other elements can make of an element, such as its provided services, performance characteristics, fault handling, shared resource usage, and so on), and the relationships between them; the term also refers to documentation of a system's software architecture".

56.    Furthermore, consistent with Hyperion's license to Software expressly conferred by the Settlement Agreement, Hyperion's license permits it "to use, develop, modify, commercialize, distribute and market the Software . . . for any current or future hardware platform." As admitted by Cloanto, certain hardware platforms require the Kickstart 1.3 content in order to run the software.

57.    Cloanto alleges that a temporary display of the **AMIGA** mark while Kickstart is booting constitutes trademark infringement, unfair competition, and "a breach of the Settlement Agreement," again relying on its own interpretation of the Settlement Agreement with respect to the alleged "breach" as well as to the extent of trademark rights enjoyed by Hyperion relative to Cloanto.

58.    Hyperion's exclusive license to use the marks **AmigaOS**, **Amiga OS**, **AmigaOne**, and **Amiga One** includes a license to use the mark **AMIGA**, which is the dominant portion of all of the foregoing marks.

59.    Nowhere does the Settlement Agreement prohibit Hyperion from using **AMIGA** alone, yet the Settlement Agreement expressly reserves the right for the Amiga Parties to "use the mark '**AMIGA'** alone or in conjunction with other words, so long as 'OS' or 'One' does not directly follow the word "'**AMIGA**.'" The perceived need to carve out this right for the Amiga Parties from

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 70
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

the exclusive license granted to Hyperion evinces that a non-exclusive right in the same also remained for Hyperion under the Settlement Agreement.

60.    Cloanto's bases for seeking a denial of Hyperion's Opposition against the Cloanto Application and an Order declaring that Hyperion is not the rightful owner of AMIGAONE, AMIGAOS or the Boing Ball Mark in this action also rely upon interpretation of the rights conferred to Hyperion under the Settlement Agreement.

**G.    Unresolved rights in the Amiga IP cause harm to Hyperion**

61.    Hyperion has continuously used the **AmigaOS**, **AmigaOne,** and **Boing Ball logo** marks in United States commerce prior to and after the Effective Date of the Settlement Agreement.

62.    The mark **AMIGA**, for which Cloanto seeks federal registration via the Cloanto Application, closely resembles Hyperion's Exclusively Licensed Marks **AmigaOS** and **AmigaOne** marks in sound, appearance, and connotation, and, hence, overall commercial impression. Many goods identified in Cloanto's application are identical to and/or closely related to the goods and services recited in Hyperion's applications and the goods and services in connection with which Hyperion has continuously used its Amiga-formative marks. Accordingly, Hyperion's customers and the public are likely to be confused, mistaken and/or deceived as to the origin and sponsorship of goods offered by Cloanto in connection with the AMIGA mark and misled into believing that such goods are provided by, or are in some other way directly or indirectly associated or affiliated with, Hyperion, resulting in injury to Hyperion and its reputation, for which Hyperion has no adequate remedy at law.

63.    Hyperion has no control over the nature and quality of the goods on which Cloanto uses **AMIGA**. In the event of false association with Hyperion, any defects, objections or faults

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 71
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    found with any goods offered in connection with Cloanto's **AMIGA** mark could inflict serious

2    injury upon Hyperion and its reputation, for which Hyperion has no adequate remedy at law.

3           64.    If the Cloanto Application were to mature to registration, Cloanto would, by law,

4    acquire the *prima facie* right to exclude others from using **AMIGA,** or terms likely to cause

5    confusion therewith, in connection with the goods set forth in such registration, and goods and

6    services similar thereto, throughout the United States. The acquisition of such right by Cloanto

7    would potentially give Cloanto the ability, absent consent or agreement to the contrary, to claim

8    rights superior to Hyperion's rights in the marks **AmigaOS** and **AmigaOne**. Such a claim would

9    damage Hyperion by causing a likelihood of confusion by and among consumers and in the trade

10   as to the true source or origin or authorization of the goods provided by Cloanto in connection

11   withn the **AMIGA** mark, and would materially devalue Hyperion's rights in its **AmigaOS** and

12   **AmigaOne** marks and the goodwill associated therewith. Such confusion and devaluation

13   will  inevitably damage Hyperion and result in irreparable harm to Hyperion for which Hyperion

14   has no adequate remedy at law.

15          65.    Under Section 7 of the Settlement Agreement, the Amiga Parties agreed "not to,

16   at any time, knowingly carry out any act or thing that may reduce the value of the Licensed Marks

17   or detract from their reputation."

18          66.    In addition to failing to renew the '045 Registration, the Amiga Parties failed

19   to  maintain  the  following  U.S.  Trademark  Registrations  (the  "Earlier-lapsed  AMIGA

20   Registrations"):

21                   a.    U.S. Reg. No. 2,369,059 – **powered by AMIGA** (and "Boing Ball"

22                      design), in connection with "*computers, computer peripherals, and*

23                      *computer operating systems*" in International Class 9 (Irrevocably

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    lapsed Jan. 18, 2011 for failure to renew)

2    b.    U.S. Reg. No. 2,319,266 – **AMIGA** in standard characters, in

3    connection with "*computer magazines*" in International Class 16

4    (irrevocably lapsed Aug 15, 2010 for failure to renew)

5    c.    U.S. Reg. No. 2,802,748 -- **AMIGA** in standard characters, in

6    connection with "computer software used to facilitate development

7    of software applications that can run on multiple platforms and other

8    electronic devices; operating system software for personal computers

9    and other electronic devices" in International Class 9 (irrevocably

10    lapsed Jul. 6, 2010 for failure to file a Section 8 Affidavit).

11    67.    On information and belief, the failure by the Amiga Parties to maintain the '045

12    Registration (and the Earlier-Lapsed AMIGA Registrations) reduced the value of the Licensed

13    Marks because of the attendant loss of protections conferred by the Lanham Act exclusively to

14    registered marks that do not extend to unregistered marks. *See, e.g.*, 15 U.S.C. §§ 1057(b), 1065,

15    15    1072, 1117, 1121, 1124 and 18 U.S.C. § 2320.

16    68.    On information and belief, the Amiga Parties knowingly decided and intentionally

17    failed to act to maintain the '045 Registration (and the Earlier-Lapsed AMIGA Registrations).

18    69.    The reduction in the value of the Licensed Marks because of the Amiga Parties'

19    failure to maintain rights, culminating with the loss of rights in the '045 Registration -- the sole

20    remaining registration with a right of renewal extending into December 2016 -- constituted

21    a material breach of the Settlement Agreement by the Amiga Parties.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

70.    The inactive state of Amiga and the actions taken by Itec as the major shareholder of Amiga suggest that Amiga may lack the capacity to enforce rights in the Amiga IP and that the chain of title between Amiga and Itec may be defective.

71.    If Itec does have full right, title and interest to the Licensed Marks, then it has an obligation to assert those rights against Cloanto to preserve those rights in the Licensed Marks for Hyperion's continued use and enjoyment.

72.    By seeking U.S. registration of AMIGA (i.e. "full ownership rights in an asset"), Cloanto is holding itself out to be a *de facto* "acquirer" of that asset under Section 15 of the Settlement Agreement. Exhibit 1 at p. 36.

73.    By allegedly selling rights in U.S. Copyright TX0003282574 to Cloanto, in view of Cloanto's allegation that its rights thereto now prohibit Hyperion's rights to fully enjoy its rights granted in the Software, the Amiga Parties are in default under the terms of the Settlement Agreement, entitling Hyperion to foreclose on the Collateral.

74.    Hyperion expressly requested that the Amiga Parties secure a copy of Exhibit 3 as executed by each and every current owner of the Licensed Marks, the Amiga Mark, and/or the Collateral, for any owner other than the Amiga Parties (who were already signatories to the Settlement Agreement).

75.    The Amiga Parties produced no such Exhibit 3 Agreement from Cloanto executed "prior to or at the closing of the acquisition or purchase" of the Licensed Marks, the Amiga Mark, and/or the Collateral as required by Paragraph 18(c) of the Settlement Agreement.

76.    Absent an order from this Court resolving ownership of the Amiga IP, the cloud over the Amiga IP will continue to cause uncertainty in the marketplace and a potential loss of valuable rights by multiple parties.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

77.     Failure by the Amiga Parties to maintain rights in the Licensed Marks, leading to the uncertainty caused by Cloanto and Hyperion's competing applications, has already invited another entity unknown to Hyperion, namely My Retro Computer LTD, listed in USPTO records as a limited partnership existing under the laws of the United Kingdom with an address of Unit A1, Pegham Ind Park, Fareham, United Kingdom PO156SD, to file U.S. Application Ser. No. 87/752,895 on January 12, 2018, seeking to register **AMIGA**, in connection with:

> *Computer cases; Computer hardware and peripherals (Based on Intent to Use) Cellular phones; Computer game programs; Computer game software; Computer game software downloadable from a global computer network; Computer hardware and computer software programs for the integration of text, audio, graphics, still images and moving pictures into an interactive delivery for multimedia applications; Computer operating programs and computer operating systems; Computer software, namely, game engine software for video game development and operation; Computer carrying cases; Computer software and firmware for operating system programs; Computer software to maintain and operate computer system; Smartphones; Carrying cases for mobile computers; Mobile operating systems; Notebook computer carrying cases; Protective cases for smartphones; Protective covers and cases for tablet computers; Rolling cases especially adapted for holding laptops and notebook computers* in class 9 *Computer software design, computer programming, and maintenance of computer software; Smartphone software design; Updating of smartphone softwar*e in class 42.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

78.    Itec once held or currently holds a recorded security interest recorded with the U.S. Copyright Office identified as V3546 D753, executed on January 5, 2007, and recorded on January 16, 2007.

79.    On information and belief, Itec's security interest document number V3546 D753 applied to some or all the Software within the Collateral as of the September 30, 2009 effective date of the Settlement Agreement.

80.    On information and belief, Itec partially assigned to Hyperion UCC Financing Statement 6293484-2 while omitting to disclose or assign Itec's security interest in the Collateral recorded in V3546 D753.

81.    On information and belief, Itec renewed UCC Financing Statement 6293484-2 in 2011 and said financing statement remained in effect until 2016.

82.    The Settlement Agreement states "[t]he Amiga Parties shall seek to record Hyperion's exclusive license to the Software with the U.S. Copyright Office."

83.    On information and belief, the Amiga Parties never recorded Hyperion's exclusive license with the U.S. Copyright Office.

84.    The Settlement Agreement entered by Stipulated Judgment in the Prior Washington Action provides a framework to resolve the rights of multiple parties in the Amiga IP, which requires interpretation and enforcement by this Court, which interpretation and enforcement Hyperion earnestly seeks.  Accordingly, an actual case or controversy exists between Hyperion and each Counterclaim Defendant, within the meaning of 28 U.S.C. § 2201(a).

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 76
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1    **H.    Hyperion's rights in the Amiga IP**

2        85.    Pursuant to the Settlement Agreement and without prejudice to the existing license

3    agreements set forth in the Settlement Agreement, Hyperion was granted an exclusive object code

4    and source code license to the Software "in order to use, develop, modify, commercialize,

5    distribute and market the Software in any form (including through sublicensing), on any medium

6    (now known or otherwise), through any means (including but not limited to making AmigaOS 4

7    available to the public via the internet) and for any current or future hardware platform."

8        86.    Hyperion's exclusive license to said rights in the copyrighted works including the

9    Software provided Hyperion with a proprietary interest in the licensed rights superior to the Amiga

10    Parties.

11        87.    With the grant of that exclusive license, the Amiga Parties gave up any right to

12    convey copyright rights in any manner that would prejudice Hyperion's exclusive license.

13        88.    Hyperion's exclusive license to the Software encompasses the reproduction, sale,

14    and distribution of AmigaOS 4.1 CD-ROMS containing Kickstart 1.3.

15        89.    On information and belief, Cloanto and its affiliates had notice of Hyperion's

16    exclusive license and interest in the Collateral pursuant to the Settlement Agreement prior to any

17    purported transfer of the Amiga Parties' interest in the Collateral to Cloanto and its affiliates.

18        90.    Consequently, the Amiga Parties and Cloanto lack standing to assert a claim for

19    copyright infringement based on rights granted to Hyperion; alternatively, any claim of copyright

20    infringement by the Amiga Parties or Cloanto against Hyperion is barred by Hyperion's exclusive

21    license.

22        91.    On information and belief, during 2006 Cloanto implemented a "Classic Support"

23    feature enabling Amiga Forever to run on non-emulated hardware.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 77
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

92.      On information and belief, in 2011, Cloanto and Amiga, Inc. entered into a settlement and coexistence agreement involving certain intellectual property rights.

93.      As noted on Cloanto's website, https://www.amigaforever.com/kb/16-125, "This official "Classic Support" scenario was further confirmed in a Coexistence Agreement between Amiga, Inc. and Cloanto, for use also outside of emulated Amiga systems. This was complemented by additional acquisitions and licenses."

94.      On information and belief, Cloanto's "Classic Support" feature extends beyond emulation and exceeds the scope of any license rights reserved to Cloanto Italia srl in Exhibit 1 to the 2009 Settlement Agreement.

## COUNT I

### Breach of Contract

95.      Hyperion repeats and re-alleges each allegation contained in paragraphs 1-94 of Hyperion's Counterclaims as if fully set forth herein.

96.      By permitting rights in the Amiga Marks to lapse, and by failing in their other obligations under the Settlement Agreement, the Amiga Parties are in material breach of the Settlement Agreement.

97.      The material breach by the Amiga Parties has deprived Hyperion of valuable rights conferred by its license in the Exclusively Licensed marks and the Software, which rights may only be recovered by judgment declaring Hyperion sole rights of ownership in the Collateral.

98.      Cloanto contends that its acquisition of copyright rights in the TX0003282574 Copyright Registration gives Cloanto certain rights, which Cloanto has interpreted as including the right to prohibit Hyperion from fully exploiting the Software in which Hyperion has an exclusive

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 78
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

license. If this allegation is found to be true, Cloanto's acquisition of copyright rights in the TX0003282574 Copyright Registration constitutes an acquisition under Section 15 of the Agreement.  Because Cloanto did not execute "the appropriate from of Exhibit 3... prior to or at the closing of the acquisition or purchase, then the Amiga Parties" are in default. Hyperion therefore is entitled to declaratory judgment of ownership in the Collateral.

99.    In the grant clause of the Settlement Agreement at 1(e)(iv), the Amiga Parties make the representation and warranty that there are no other license agreements with respect to the Software or the Exclusive Licensed Marks other than the Existing License Agreements listed in Exhibit 1 to the Settlement Agreement.

100.    In the "scope of rights granted" in connection with the various license agreements listed in Exhibit 1 of the Settlement Agreement, the right to distribute the Kickstart module is expressly granted to certain entities, but is not expressly listed in the scope of the rights granted to Cloanto Italia srl, nor does Exhibit 1 list any licenses to Cloanto (Corporation), which is, on information and belief, a different entity from Cloanto Italia srl.

101.    Section 1(b) of the grant clause of the Settlement Agreement prohibits the Amiga Parties from distributing "Substantially Similar Software Architecture," as defined therein, "including through sub-licensing." Although Hyperion's exclusive license is granted "without prejudice to any Existing License Agreements," Exhibit 1 to the Settlement Agreement does not reserve any right for Cloanto to distribute the Kickstart module (or any other Substantially Similar Software Architecture ) at all, let alone the right to exclude Hyperion from distributing Kickstart 1.3 or any Kickstart version filed by Cloanto with the US Copyright Office including, without limitation, Kickstart 2.04, Kickstart 3.0 and Kickstart 3.1.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

102.    Cloanto's asserted exclusive rights in Kickstart 1.3, whether based upon a license from the Amiga Parties not listed in the Settlement Agreement or a transfer of assets from the Amiga Parties in contravention of the Settlement Agreement, represents a material breach of the Settlement Agreement by the Amiga Parties.

### COUNT II

**Declaratory Judgment of No Copyright Infringement of**

**U.S. Copyright Reg. No. TX 0003282574**

103.    Hyperion repeats and re-alleges each allegation contained in paragraphs 1-102 of Hyperion's Counterclaims as if fully set forth herein.

104.    Cloanto contends that its acquisition of copyright rights in the TX0003282574 Copyright Registration gives it the right to prohibit Hyperion from including the code corresponding to Kickstarter 1.3 on CD-ROMs distributed to others.

105.    On information and belief, the code of "Kickstart 1.3" covered by TX0003282574, is subsumed within the Software to which Hyperion has an Exclusive License.

106.    Accordingly, Hyperion's exclusive license in the Software also includes an exclusive license to the code protected by TX0003282574.  Consequently, Cloanto lacks standing to assert a laim of copyright infringement based on any rights arising out of U.S. Copyright Reg. No. TX0003282574 or any of the Software and Hyperion has not infringed any exclusive rights held by Cloanto in TX0003282574.      Alternatively, Hyperion has a non-exclusive license to that code. Alternatively, any claim by Cloanto is barred by Hyperion's license rights.

107.    The Settlement Agreement grants Hyperion a license "to use, develop, modify, commercialize, distribute and market the Software . . . for any current or future hardware platform."

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

108. Cloanto has admitted that certain hardware platforms require the Kickstart 1.3 code to run the software.

109. Cloanto's allegations show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## <u>COUNT III</u>

**Declaratory Judgment of No Trademark Infringement and No Unfair Competition**

110. Hyperion repeats and re-alleges each allegation contained in paragraphs 1-109 of Hyperion's Counterclaims as if fully set forth herein.

111. In this action, Cloanto accuses Hyperion of infringing the AMIGA trademark.

112. Neither Cloanto's non-exclusive use of AMIGA under license from the Amiga Parties, nor the Cloanto Application, which is opposed by both Hyperion and Itec, confers upon Cloanto standing to assert rights in the AMIGA trademark against Hyperion.

113. Cloanto's allegation that Hyperion's alleged use of AMIGA constitutes infringement relies upon Cloanto's flawed interpretation of the Settlement Agreement, and creates a dispute which only this Court has the power to resolve.

114. Hyperion's exclusive license to use the marks AmigaOS, Amiga OS, AmigaOne, and Amiga One includes a license to use the mark AMIGA, which is the dominant portion of all of the foregoing marks.

115. Cloanto's allegations show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1

2                          **COUNT IV**

3    **Declaratory Judgment that Hyperion Is the Rightful Owner of AMIGAONE, AMIGAOS,**

4                    **the Boing Ball Mark, and the Software**

5         116.    Hyperion repeats and re-alleges each allegation contained in paragraphs 1-115 of

6    Hyperion's Counterclaims as if fully set forth herein.

7         117.    Pursuant to the Settlement Agreement, Hyperion owns an exclusive Object Code

8    and Source Code in the Software.

9         118.    Pursuant to the material breach of the Settlement Agreement and/or default by the

10   Amiga Parties, Hyperion is entitled to declaratory judgment that it is the sole owner of the

11   Collateral under the Settlement Agreement.

12        119.    Hyperion, as the owner of exclusive Source Code and Object Code license in the

13   Software and Software Architecture, is entitled to a declaration of exclusive rights of all rights of

14   ownership attendant to the Software and Software Architecture, including, without limitation,

15   copyright.

16        120.    Hyperion is entitled to a declaratory judgment obligating Cloanto to transfer all

17   copyright registrations to Hyperion.

18

19                          **COUNT V**

20   **Declaratory Judgment that Hyperion has a non-exclusive license to use the AMIGA mark**

21        121.    Hyperion repeats and re-alleges each allegation contained in paragraphs 1-120

22   of Hyperion's Counterclaims as if fully set forth herein.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 82
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

122.    Hyperion's exclusive license to use the marks AmigaOS, Amiga OS, AmigaOne, and Amiga One includes a license to use the mark AMIGA, which is the dominant portion of all of the foregoing marks.

123.    Hyperion is entitled to a declaratory judgment that Hyperion has a non-exclusive license to use the AMIGA mark.

124.    Counterclaim Defendants' allegations that Hyperion has infringed the AMIGA mark show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## <u>COUNT VI</u>

**Declaratory Judgment That Cloanto is Not Entitled to Register the AMIGA Mark**

125.    Hyperion repeats and re-alleges each allegation contained in paragraphs 1-124 of Hyperion's Counterclaims as if fully set forth herein.

126.    If Cloanto were to be recognized as the sole owner of the AMIGA mark, without having executed "the appropriate form of Exhibit 3[5] . . . prior to or at the closing of the acquisition or purchase" as required by the 2009 Settlement Agreement, Cloanto would be in a position to disrupt and dilute Hyperion's exclusive rights in the marks **AmigaOS**, **Amiga OS**, **AmigaOne**, and **Amiga One**, because the dominant portion of all of the foregoing marks is AMIGA.

127.    Cloanto is entitled at most to a non-exclusive license to AMIGA, and Hyperion has an exclusive license to use the marks **AmigaOS**, **Amiga OS**, **AmigaOne**, and **Amiga One**, both from a common licensor**.**

128.    Accordingly, Hyperion is entitled to a declaratory judgment that Cloanto is not entitled to register the AMIGA mark.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1

2

## COUNT VII

### Intentional Interference with Contract or Business Expectancy

3       129.    Hyperion repeats and re-alleges each allegation contained in paragraphs 1-128

4   of Hyperion's Counterclaims as if fully set forth herein.

5       130.    On or about May 26, 2021, Gordon Troy, counsel for the Amiga Parties, sent a

6   letter to corporate counsel for 2Checkout.com. The letter noted that Hyperion had released

7   AmigaOS 3.2 and threatened to hold 2Checkout.com liable for trademark and copyright

8   infringement if 2Checkout.com released a digital version of such product. The letter further

9   summarized the Amiga Parties' view of the instant litigation and attached one of the Court's

10  decisions (Dkt. No. 69). Counsel for the Amiga Parties' letter also stated that "[o]ur recent

11  investigation of Hyperion . . . suggests that Hyperion has insufficient resources to honor its

12  indemnification obligations." The letter concluded by demanding the removal of certain AmigaOS

13  3.1.4 downloads from the 2Checkout.com platform.

14      131.    On or about June 13, 2021, Gordon Troy, counsel for the counsel for the Amiga

15  Parties, sent a letter to Insight Vision Ltd. The letter claimed that Insight Vision Limited was the

16  manufacturer of CD-ROM's containing an AmigaOS 3.2 product ordered by Hyperion. The letter

17  further stated that such product infringes the Amiga Parties' copyright and trademark rights.

18  Counsel for the Amiga Parties further claimed in the letter that "since May 7, 2021, Mr. Ben

19  Hermans cannot represent himself as 'director' of Hyperion." The letter demanded an accounting

20  of the number of CD-Roms manufactured by Insight Vision Ltd and the number already delivered

21  to Hyperion.

22      132.    On or about June 16, 2021, Gordon Troy, counsel for the counsel for the Amiga

23  Parties, sent a letter to Karen Anderson, Vice President of Global Litigation, Employment Law &

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 84
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

Intellectual Property for Verifone. The letter threatened Verifone with copyright and trademark infringement and discussed a proposal from Verifone for an "interim suspension" of sales of AmigaOS 3.1.4 and AmigaOS 3.2. The letter further stated that such product infringes the Amiga Parties' copyright and trademark rights. Counsel for the Amiga Parties further claimed in the letter that "since May 7, 2021, Mr. Ben Hermans cannot represent himself as 'director' of Hyperion."

133.    As a result of counsel for the Amiga Parties' communications with 2Checkout.com and Verifone, through a June 15, 2021 email from Karen Anderson to Gordon Troy, Verifone offered to suspend all sales of Amiga 3.1.4 and 3.2 "until a court can resolve this issue."

134.    Verifone also stated to Hyperion in a June 17, 2021 email from Karen Anderson to Ben Hermans that Verifone would likely "require confirmation of indemnification and defense" by Hyperion.

135.    Hyperion has rights under contract as well as a valid business expectancy in its rights under the Settlement Agreement, including Hyperion's rights of ownership and use of the Amiga IP described herein.

136.    Upon information and belief, Cloanto and the Amiga Parties had knowledge of Hyperion's rights under the Settlement Agreement, or of the Prior Washington Action, or of Hyperion's business expectancy.

137.    The actions of Cloanto and the Amiga Parties, including those described herein, constitute an intentional, tortious interference with Hyperion's contract rights and/or business expectancy, which has caused and continues to cause injury to Hyperion, for which Hyperion has no adequate remedy at law.

138.    Hyperion is thus entitled to the equitable remedies prayed for below.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 85
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## COUNT VIII.

### Breach of Contract by Cloanto

139.    Hyperion repeats and re-alleges each allegation contained in paragraphs 1-138 of Hyperion's Counterclaims as if fully set forth herein.

140.    Cloanto alleges it is an "Acquirer" of certain assets from one or more of the Amiga Parties including the Collateral (or part thereof) as defined in the 2009 Settlement Agreement.

141.    Cloanto alleges it has executed Exhibit 3 to the 2009 Settlement Agreement but admits Exhibit 3 was not executed "prior to or at the closing of" the acquisition of said certain assets.

142.    Paragraph 1(b) of the 2009 Settlement Agreement provides, in pertinent part: "the Amiga Parties shall during the term of this Agreement <u>not</u> commercialize anywhere in the world …, distribute … or make available to the public … in any way or form (including but not limited to Object Code and Source Code form), on any medium (now known or otherwise) and through any means (now known or otherwise) the Software (in part or as a whole) and any Operating System exhibiting a … Substantially Similar Software Architecture …." (emphasis added).

143.    Cloanto alleges that, by virtue of its execution of Exhibit 3, Cloanto is bound by the terms and conditions of the 2009 Settlement Agreement applicable to the Amiga Parties, which includes all obligations of the Amiga Parties.

144.    To the extent Cloanto's execution of Exhibit 3 is valid, Hyperion is the intended beneficiary of the obligations undertaken by Cloanto.

145.    Following execution of Exhibit 3, Cloanto has commercialized, distributed and/or made available to the public the Software (in part or as a whole) through its "Amiga Forever" product.

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 86
Civil Action No. 2:18-cv-00381

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

146.    Following execution of Exhibit 3, Cloanto has commercialized, distributed and/or made available to the public an Operating System exhibiting a Substantially Similar Software Architecture, through its "Amiga Forever" product.

147.    Cloanto's activities constitute a breach of the obligations in the 2009 Settlement Agreement undertaken by Cloanto. This breach is the proximate cause of harm to Hyperion for which Hyperion has no adequate remedy at law.

148.    Hyperion is thus entitled to the equitable relief set forth below.

## **PRAYER FOR RELIEF**

In view of the foregoing, Hyperion asks that this Court grant relief as follows:

A.    A declaratory judgment that the Amiga Parties have materially breached the Settlement Agreement;

B.    A declaratory judgment that the Amiga Parties are in default of the Settlement Agreement;

C.    A declaratory judgment subordinating the Amiga Parties' rights to the rights of Hyperion as to any security interest in the Collateral that was held, individually or collectively, by the Amiga Parties at the time of the Settlement Agreement and not disclosed in the Settlement Agreement;

D.    A declaratory judgment that Hyperion is the rightful owner of the Collateral identified in the Settlement Agreement, including the Software and the AmigaOne, AmigaOS, Amiga One, Amiga OS, and Boing Ball Logo marks; alternatively, a judgment that Hyperion possesses an attached security interest in the Collateral;

E.    A declaratory judgment that Hyperion has a valid license to use the AMIGA trademark;

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

F.      A declaratory judgment that temporary display of the AMIGA mark when Kickstart 1.3 boots does not constitute trademark infringement of any right owned by Cloanto or any other party in the AMIGA mark;

G.      A declaratory judgment that Hyperion has an exclusive license to reproduce, distribute, publicly display, publicly perform, and prepare derivative works based on the Kickstart 1.3 code in conjunction with AmigaOS 4.x;

H.      A declaratory judgment that Hyperion reproducing, distributing, publicly displaying, publicly performing, and preparing derivative works based on the Kickstart 1.3 code in conjunction with AmigaOS 4.x does not constitute infringement of U.S. Copyright TX0003282574;

I.      A declaratory judgment as to whether the Amiga Parties, or which among them, owns any portion of the Amiga IP;

J.      A declaratory judgment that Hyperion has not committed acts of unfair competition;

K.      A declaratory judgment that Cloanto is not entitled to register the AMIGA mark;

L.      An order prohibiting any of the Counterclaim Defendants from opposing Hyperion's Applications to register AmigaOS, AmigaOne, and the Boing Ball logo;

M.      Legal and equitable remedies sufficient to redress any injury to Hyperion resulting from Cloanto's intentional interference with Hyperion's rights under contract or business expectancy;

N.      An award of the full costs and reasonable attorneys' fees for the prosecution of this

O.      For such other and further relief as this Court deems just and fair.

**Bamert Regan**
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180

1

2

3         DATED this 11th day of August, 2023.


                                    BAMERT REGAN


                                    s/ John J. Bamert
                                    John J. Bamert, WSBA No. 48128
                                    Kevin E. Regan, WSBA No. 44565
                                    Bamert@BamertRegan.com
                                    Regan@BamertRegan.com
                                    113 Cherry St., Unit 55215
                                    Seattle, Washington 98104
                                    T: 206.669.2402
                                    T: 206.601.5180

                                    *Attorneys for Defendant and Counterclaim
                                    Plaintiff, Hyperion Entertainment C.V.B.A.*

HYPERION'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT
AND SECOND AMENDED COUNTERCLAIMS - 89
Civil Action No. 2:18-cv-00381

Bamert Regan
113 Cherry St, Unit 55215
Seattle, WA 98104
BamertRegan.com
206.669.2402
206.601.5180