The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CLOANTO CORPORATION, AMIGA, INC., ITEC, LLC and AMINO DEVELOPMENT CORPORATION,<br><br>Plaintiffs,<br><br>- against -<br><br>HYPERION ENTERTAINMENT CVBA,<br><br>Defendant. | DECLARATION OF MICHELE CONSOLE BATTILANA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO HYPERION'S MOTION FOR ATTORNEY'S FEES<br><br>Civil Action No.: 2:18-cv-00381-RSM (consolidated with 2:18-cv-00535)<br><br>Noted on Motion Calendar: April 28, 2023 |
| HYPERION ENTERTAINMENT CVBA<br><br>Counterclaim Plaintiff,<br><br>- against -<br><br>CLOANTO CORPORATION, AMIGA, INC., ITEC, LLC and AMINO DEVELOPMENT CORPORATION,<br><br>Counterclaim Defendants. | |



**GORDON E. R. TROY PC**
183 Highfield Drive, West Windsor, VT 05089
P.O. Box 67, Windsor, VT 05089
(802) 881-0640

I, Michele "Mike" Console Battilana, declare under penalty of perjury pursuant to 28 U.S. Code § 1746 as follows:

1. I make this declaration based on my personal knowledge, except where I have indicated otherwise. If called as a witness, I would testify competently and truthfully to these matters.

2. I am President and sole shareholder of Cloanto Corporation. I founded Cloanto Corporation with other partners on June 15, 1998, in Las Vegas, Nevada, where the company still has an accountant. I chose Nevada because of local information technology contacts and friends. The purpose of the company was to facilitate software development work, and sales to larger US clients. The company was immediately independent and self-sufficient. Like any other company, it has a bank account, enters into contracts, pays expenses, and files tax returns.

3. In my early years as an Amiga developer (1986-1997), I was not aware of a "tortured history of litigation." My relationship with all Commodore and Amiga parties was always an amicable and constructive one. We were quite successful developers. Our software was bundled with Amiga computers. Before this case started in 2017, I was never embroiled in a lawsuit but for proceedings in the United States Patent and Trademark Office (all but one of which involved Hyperion), and I knew of only two Amiga-related lawsuits. Mr. Ben Hermans was involved in both, first on the side of Amiga, Inc. then against it. Mr. Hermans describes himself as "a member of the Antwerp Bar Association as well as an Intellectual Property litigator with over 20 years of relevant experience." The word "litigator" is in Mr. Herman's professional DNA, not in mine. I know that beyond being the director of Hyperion, he also owns more than 90% of the company, directly or through his law firm Ben Hermans BV.

4. I believe that the following statement in Ben Hermans' Declaration in support of Hyperion's Motion for Summary Judgment (Dkt. 106, ¶ 7) does not facilitate an understanding of the case (or the 2019 acquisition) because it is simply false: "Since the 1980s, the parties to this lawsuit have been litigating ownership and licensing disputes related to the Amiga operating



GORDON E. R. TROY PC
183 Highfield Drive, West Windsor, VT 05089
P.O. Box 67, Windsor, VT 05089
(802) 881-0640

system software." Not only did the first lawsuits start only in the 2000s (not the 1980s), but the first agreement that Hyperion's predecessor, Hyperion VOF, entered into with Amiga, Inc. was in 2001. Moreover, the "Amiga Parties" in the 2009 Settlement Agreement were not parties to this litigation when it started in 2017.

5. I believe that the Amiga Parties indeed considered all litigation to have ended for good with the 2009 Settlement Agreement, and had no intention of seeing it all flare up again. This all changed in March 2018, when Hyperion sued the Amiga Parties again (rather than the other way around). I believe that being dragged again into litigation, and the fact that we were on the same side of the case caption, brought us closer, and facilitated acquisition talks. Our first conference call discussing acquisition ideas took place in April 2018, i.e., the month after Hyperion's complaint against the Amiga Parties.

6. As my past history shows, the acquisition had a passion and commitment for Amiga at its core, and was certainly not meant to complicate the case. I never expected that it could be construed in this way. Four years later, due to this case, Amiga trademark and copyright ownerships and contractual rights remain more fragmented than they need to be. Out of an abundance of caution, we also have not yet set up the not-for-profit entity which was explicitly mentioned in the 2019 acquisition agreement, and which I always intended to be the entity to channel the long-term preservation efforts of Commodore/Amiga history and culture.

7. I had big hopes, but no actual control over the completion of the acquisition until the very day it actually happened on February 1, 2019. The timing of negotiations, as well as consummation of the purchase, were controlled by Reed Smith, which represented Amiga, Inc.

8. To close the Asset Purchase Agreement, Cloanto Corporation agreed to pay, and did pay, a large sum of money for the Amiga assets. In addition, both Cloanto Corporation and C-A Acquisition Corp. indemnified the Amiga Parties against all lawsuits, damages, and losses, including this one.

9. Because I did not know when the acquisition might occur, I delayed forming C-A



GORDON E. R. TROY PC
183 Highfield Drive, West Windsor, VT 05089
P.O. Box 67, Windsor, VT 05089
(802) 881-0640

Acquisition Corp. until it became necessary. C-A Acquisition Corp. was formed specifically for the purpose of holding the transferred trademarks and related rights.

10. During the long negotiations, I could not divulge to anyone that they were happening. Any number of Amiga-interested people, some who were quite wealthy, could have outbid me. Hyperion, too, could have opened their own negotiations and outbid me. For this reason, I did not and could not divulge the negotiations to anyone but my own attorneys.

11. Since this case started, I made numerous attempts to reach a settlement, including traveling on a number of occasions to meet Hyperion shareholders Mr. Hermans, Mr. De Groote, and Mr. Dickinson, and to discuss settlement. When Hyperion confirmed to the Court on January 20, 2021, that "the Parties reached the terms of settlement on the main agreement" and that only ancillary matters (i.e. some exhibits) needed attending, I felt an immeasurable sense of relief. Unfortunately, several days later Mr. Hermans pulled away from our agreement, providing a string of excuses unrelated to the actual agreed-upon terms.

I hereby state under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 24th day of April 2023, at Cividale del Friuli, Italy.



Michele Console Battilana



GORDON E. R. TROY PC
183 Highfield Drive, West Windsor, VT 05089
P.O. Box 67, Windsor, VT 05089
(802) 881-0640